## BISHOP'S HEIRS vs. HAMPTON.

1. If an entire record, or a part thereof, is lost or destroyed, another may be substituted in its stead upon proof of the contents of that which is lost.

2. But the substitute must be consistent with that part remaining on file, and must not alter or vary its legal effect as evidence.

3. When the petition, upon which a sale of lands belonging to a decedent was decreed by the Orphans' Court, is lost, and the record shows that the grounds upon which the sale was decreed were, that the estate was solvent, and that it would be of infinite benefit to the heirs to sell the land, a petition alleging the additional ground that the land could not be equally, fairly and beneficially divided among the heirs at law, cannot be substituted for that which is lost.

4. The order of the Orphans' Court, allowing the substitution of the petition in such a case, is such a final judgment or decree as will support a writ of error.

5. The parties to the motion in the court below are the proper parties to the writ of error, the plaintiff being one who claims under the purchaser at the sale, and the defendants the heirs at law of the decedent.

ERROR to the Court of Probate of St. Clair.

THE facts of this case upon which the questions of law arise, may be thus stated: Joel Chandler was duly appointed administrator of the estate of Harris G. Bishop, by the Orphans' Court of St. Clair, and on the 11th day of March, 1836, the following order was made by said court and entered upon the minutes of the court: "This day came into court Joel Chandler, administrator of the estate of Harris G. Bishop, deceased, and makes report to the court that said estate is perfectly solvent, and that it would be of infinite benefit to the heirs of said estate to sell without delay the real estate belonging to said estate. It is therefore ordered that his petition be received and an order of sale be made." On the same day an order of publication was made, citing the heirs and all others interested in the land to appear before the Orphans' Court on the first Monday in May next thereafter, and show cause why the sale of said real estate should not be made. On the 24th of July, 1836, the following order or decree was made: "Whereas, the petition of Joel Chan-

Bishop's Heirs v. Hampton.

dler, sen'r., administrator, was filed in court on the 11th of March, 1836, for the sale of the real estate of Harris G. Bishop, deceased, and forty days notice having been given in the Huntsville Democrat, according to law, and no cause being shown why the sale of said real estate should not be ordered, it is therefore ordered by the court that the several tracts of land described in the administrator's petition, shall be sold on the first Monday of September next, and that Samuel Sauls, Jeremiah Gregory and James Anderson, be appointed commissioners to superintend the sale of the same in all things, pursuant to the requirements of the statute." Nothing further appears of record until September, 1847, when two of the commissioners reported that in pursuance of the order they had sold the land, and that Joel Chandler had become the purchaser for seventeen hundred and ten dollars. In this report the lands are particularly described. On the 5th March, 1849, James Hampton, filed a petition in the Orphans' Court, in which he set forth that he had become the purchaser of the lands from Joel Chandler during his life time, and after Chandler had bought them at the sale ordered by the court, and that the heirs at law of Harris G. Bishop had sued him to recover them. In this petition it is also stated that the application and petition of Joel Chandler to sell the lands of Harris G. Bishop was in writing, but that it had been lost from the file of papers and could not be found; that it described the lands, and named who were the heirs at law of Harris G. Bishop, and prayed a sale for the reason that the lands could not be equally, fairly, and beneficially divided amongst the heirs at law without a sale of the same. The petitioner then proceeds to set out the application and petition of Joel Chandler, that had been filed, and which was lost, and prays that his statement of the application be substituted in lieu of the lost petition, and the record thus perfected. Notice was served on the heirs of Bishop, who appeared and contested the propriety of allowing the substance of the petition filed by Joel Chandler to be substituted in lieu of the petition itself. But their objections were overruled, and upon the testimony of Mr. Ragan, who was the judge of the Orphans' Court when the petition of Chandler was filed, it was decided that the petition of Hampton ought to be granted, and ordered that his statement of the contents of Chandler's petition should be received and filed as part of the record, thus supplying the lost

51

petition. The heirs of Bishop excepted to the ruling of the Orphans' Court, and bring the case here by writ of error.

J. B. MARTIN, for plaintiffs in error :

1. The substitution was improperly allowed. The original entry was the best evidence of the grounds upon which the sale was ordered, and it recites but two grounds. The substituted petition alleges the further ground that the real estate could not be equally, fairly and beneficially divided among the heirs at law. This conflicts with the recitals in the original entry, and its admission would be an infraction of the rule that a record imports absolute verity, and cannot be contradicted by parol. An imperfect record may be amended, but this can only be where there is some matter of record to amend by.—1 Bacon's Abr. 251, F; 1 Stew. & P. 167; 9 Por. 252; 2 Ala. 29; 10 ib. 375; 3 Smedes & M. 234; 2 Bibb 248; 2 Marsh. 151; 1 Monroe 218. Again : when amendments are allowable, application must be made for them in a reasonable time, which has not been done in this case. Here the original entry was made in 1836, and the application to amend was made in 1849.—9 Johns. 556; 2 Bay 398; 3 Ham. 486; 1 ib. 375.

2. A writ of error will lie from the order of the court allowing the substitution. It is in effect a final judgment,—Clay's Dig. 297, § 4; 1 Ala. 208. When the power of the courts over amendments is improperly exercised, it may be revised by writ of error.—10 Ala. 375; 15 ib. 79. This case is analagous in principle to a motion, made by a stranger to a judgment, to set aside a sale of land under an execution issued on the judgment, which is revisable on writ of error.—10 Ala. 293; 16 ib. 516.

3. The proper parties are made to the writ of error. The plaintiff in the motion below was the vendee of the purchaser at the sale, and the heirs at law of the decedent were made defendants, and the parties to the writ of error are the same.—1 Stew. & P. 159; 7 Ala. 736; 8 ib. 177; 16 ib. 343; 5 Howard's (Miss.) R. 638.

RICE & MORGAN, contra:

1. The writ of error should be dismissed. The bill of exceptions should be disregarded. There is no judgment or decree in

favor of Hampton; nothing but an order of the court substituting a petition for the sale of real estate filed in the Orphans' Court in 1836. No writ of error will lie to such an order of the Orphans' Court, especially as against Hampton, nor will a bill of exceptions lie in such case. In the case of McLendon v. Jones, (8 Ala. 298,) there was not only an order of substitution, but a final judgment by the Circuit Court in favor of Jones v. McLendon, for $100 and cost of suit.—Bowen v. Lanier, (N. C.) Term R., 241; White v. Shannon, 3 Ala. 286; 3 Phil. on Ev. 788; Moore v. Hancock, 11 Ala. 245. See Woodruff v. Taylor, (20 Verm. 65,) as to the natue of a proceeding *in rem.*

2. All courts of justice, independent of express legislation, have the inherent power to substitute a judgment, roll or entry, or any other part of their records, when the original record is lost; and the substituted matter becomes a record of equal validity with the original.—McLendon v. Jones, 8 Ala. 298; Lyon v. Bolling, 14 ib. 753; 3 Phil. on Ev. 1066; Dozier v. Joyce, 8 Por. 309.

3. As to the power of the court to allow amendments even without notice, and to enter judgments *nunc pro tunc,* see the following authorities: Hood v. Bank, 9 Ala. 335; Wilkerson v. Goldthwaite, 1 Stew. & P. 167; Mays v. Hassel, 4 Stew. & P. 222; Caffey v. Wilson, 2 Ala. 701. Allen v. Bradford, 3 ib. 282; State v. McAlpin, 4 Iredell's R. 140; Mosseau v. Brigham, 19 Verm. 457, shows " the revisory power" of every court over its own records.

4. The power to allow amendments, or perfect judicial proceedings, is not confined to matters actually appearing of record, but extends to all such matters as should have appeared of record, and extrinsic evidence may be resorted to. —4 Ired. 140; Hood v. Bank, 9 ib. 335; Halford v. Alexander, 12 ib. 288, and cases cited; Caffey v. Wilson, 2 ib. 701; Smith v. Redus, 9 ib. 101; 19 Verm. 457.

It is a sound principle and well established, that the death of a party, after the other party has become entitled to the judgment of the court, shall not deprive the party thus entitled of the judgment, but the court will render the judgment or perfect it, even after such death. No court of justice will permit its own delay to work injury to a party, especially when it has the power to prevent it. Its power to act is not destroyed by such

death of a party.—Halford v. Alexander, 12 Ala. 288, and cases there cited; Green v. Cobden, 36 Eng. Com. L. R. 392; Brown v. Wheeler, 18 Conn. 207.

A sale of land under the order of the Orphans' Court is " the act of the court, through the commissioners as its ministerial agents, over whose acts it retains a controlling power."—Jennings v. Jenkins, 9 Ala. 285.

All that a purchaser at such sale can do, is to comply with the terms of the sale. This was done promptly by the purchaser in this case. It was then due by the court to the purchaser, that it should have required its ministerial agents (the commissioners) to have made their report; but the court did not do this, and the whole delay is the delay of the court. This delay of the court continued until the purchaser sold and conveyed to another, (Hampton,) and until the purchaser died. Whilst the purchaser lived, the court had power to require or receive a report from its ministerial agents. The death of the purchaser did not destroy this power of the court over its own agents. But it was proper that the court, after the death of the purchaser, should do what it ought to have done while he lived. The court was bound to do it, *nunc pro tunc*, or subject itself to the reproach of allowing persons to suffer by its own delay.—Bonner v. Greenlee, 6 Ala. 411, and cases *supra*.

It matters not at what precise time the Orphans' Court did its duty, by causing a report to be made by its own agents, confirming the report and decreeing a conveyance to the purchaser. Whenever these things were done by it in performance of its duty, whether before or after the death of the purchaser, they had relation back to the time when they ought to have been done. They do not derive their validity from the fact that the purchaser is alive when the conveyance is actually decreed and executed, but from the power of the court to complete and perfect a sale of land, which it rightfully made to a purchaser who was alive until he complied with the terms of sale, and thus performed all the law or court required of him.

But for this doctrine of legal relation, there would be no meaning in allowing to courts the power to amend proceedings, to make entries *nunc pro tunc*, to complete and perfect that which they have only partially done. A judgment *nunc pro tunc* has " a retrospective relation," and nothing that has occurred *post*

*factum* can be presented in opposition to it.—Allen v. Bradford, 3 Ala. 282.

The report of commissioners when made, is like an amended return of a sheriff, and has the same effect " as if it had been entered in due time, as required by law."—Leavitt v. Smith, 14 Ala. 279; Hodges v. Laird, 10 Ala. 680; Allen v. Bradford, 3 ib. 282; Brandon v. Snow, 2 Stew. 255.

DARGAN, C. J.—If an entire record, or a part thereof, is lost or destroyed, another may be substituted in its stead upon proof of the contents of that which is lost. This has been so often decided by this court that the question is not open to controversy.—Joyce v. Dozier, 8 Por. 303; Williams v. Powell, 9 ib. 493; McKenzie v. Bonham, 5 Ala. 608; McLendon v. Jones, 8 Ala. 298. But I have found no case that goes so far as to hold that when a part only is lost, it may be substituted, and its contents shown by parol proof to be repugnant to or inconsistent, with the part remaining. And I am entirely satisfied that when it is proposed to substitute a part of a record by parol proof, it must be consistent with the part remaining on file, and not alter or vary its legal effect as evidence. A contrary rule would allow a record to be altered by parol proof, in violation of the maxim, that a record speaks the language of verity, and the parties bound thereby can aver nothing against its truth.

Applying this test to the action of the Orphans' Court, in allowing the petition of the administrator to sell the land of H. G. Bishop, dec'd., to be substituted in lieu of the petition that was lost, I think the court erred; for the entries on the minutes of the court show that the grounds on which the application to sell the land was made, were, that the estate was entirely solvent, and that it would be of infinite advantage to sell the real estate. The judgment entry also shows that a day being set to hear the application, and the heirs at law notified to show cause why it should not be granted, none was shown, and therefore a decree of sale was rendered. The grounds, therefore, upon which the court proceeded to decree a sale, as appears from the record remaining on file, were, that the estate was solvent, and that it would be of infinite benefit to the heirs to sell the land. But the petition proposed to be established by the parol proof shows that the grounds upon which the administrator proceeded to ob-

tain the order of sale, were, not only that the estate was solvent, and that it would be beneficial to the heirs to sell, but also the further ground that the land could not be equally, fairly, and beneficially divided between the heirs at law, without a sale. To allow this petition to be substituted by parol proof, would be to allow a new fact to be added to the record that remains on file, and thus the legal effect of the part not lost would be altered, or varied, by parol proof, in violation of one of the most sacred rules of evidence.—See The Heirs of Bishop v. Hampton, 15 Ala. 761.

2. But it is contended that a writ of error will not lie to the order of the Orphans' Court, allowing the substitution. We cannot agree with the defendant's counsel in this proposition. The substitution of the record of a final judgment or decree is in its nature a final order or judgment, and is conclusive against the party unless reversed or annulled. We entertain no doubt but it may be reversed by writ of error.

Nor is the writ of error defective on account of parties. The defendant in error, who has succeeded to all the rights of the purchaser who bought the land, at the administrator's sale, made the motion to substitute the lost record, and gave the plaintiffs in error, who inherited the land from the father, notice thereof. There could be no necessity for making any other person than the parties to this motion parties to the writ of error.

The judgment of the Orphans' Court allowing the petition to be substituted in lieu of the one that is lost is erroneous, and must be reversed.