WILLIAM R. KEEN, ELIAS E. JOHNSON AND WILLIAM J. BAR-
NETT, APPELLANTS, VS. DAVID JORDAN, ADMINISTRATOR, &C.,
APPELLEE.

1. When a bill in chancery, in the prayer for process, does not contain the names of the defendants against whom process of subpœna is prayed, as required by Rule 23, (Chancery Rules,) it is demurrable, it being a defect in the frame of the bill.

2. When a demurrer to a bill is filed without being accompanied by certificate of counsel as required by the 31st Chancery Rule, advantage of the omission should be taken by motion to strike off the demurrer; but if the parties proceed to a hearing without regarding the omission, and the questions raised by demurrer are passed upon by the court, it is too late, upon appeal, to raise the objection.

3. A bill in chancery was filed, praying that the record of a judgment at law and an execution thereon, which had been destroyed by fire, might be re-established or supplied by copies thereof, and that a copy of the execution might be placed in the hands of the sheriff in lieu of the one destroyed : *Held,*

4. On demurrer to the bill, that the power to supply a new record when the original has been lost or destroyed, pertains to the court in which the record was made, and is an inherent power in courts of general jurisdiction; and a court of equity has no jurisdiction to supply or establish the record of a court of law which has been lost or destroyed.

The case is fully stated in the opinion of the court.

*Bryson & King* for Appellants.

The bill should contain a prayer for process against all the parties, and none are parties unless they are specially named in the prayer, unless there is some other special prayer in the bill, and they are specially named in the same.  1 Dan. Chy., p. 392, note 3 ; 23 Eq. Rule, Index, p. 206 ; Story's Eq. Pl., 44, note 3.

There is a clear and complete remedy at law, and where this is the case, a court of equity will not entertain jurisdiction, unless it is clearly and distinctly given by an act of the Legislature.    1 Story's Eq. Juris., 64, 65, 67 ; Story's

Eq. Pl., 472; 17 How., 130; 5 Fla., 350; 5 Pet., 495, 503.

Is there a clear and complete remedy at law in this case? The statutes provide a remedy. Thomp. Dig., 360–61–64; Act of 1862, p. 47; Act of 1866, p. 33; ib., 24.

But it may be contended, as it was in the court below, that the act of 1862, secs. 9 and 12, gives the court of chancery jurisdiction. Section 9 provides that when any documents, papers or instruments of writing pertaining to proceedings and matters pending and undetermined in any court in this State, shall be lost, mislaid or destroyed, all such papers, documents and instruments of writing may be established in the manner prescribed by law in reference to lost papers, or in the manner pointed out in this act, or in such manner as the court specially shall direct.

It is contended that this, if it can have any meaning, means some legal and known manner, and that it does not give the court of chancery any new jurisdiction, nor can it be so construed that a judge of the Circuit Court, sitting as a judge at common law, can give a court of chancery such jurisdiction to re-establish a record of the Circuit Court at law.

It cannot be contended that these proceedings are in accordance with the 5th section of this act, for it clearly means the court in which the judgment or decree was rendered, and none of the requirements of that section have been complied with. But it may be contended that this is, in some other manner, specially pointed out as the court shall direct.

It is contended that the court of chancery, under the 5th section, might re-establish a decree or record of its own, but it would be a monstrous proposition to say that it had authority to re-establish a record of a court of common law, and especially so where the proceedings are as defective as they are here. See Præcipe, Summons and Judgment.

It may be contended, however, that the 12th section, as it was in the court below, gives the necessary power. This

Keen, et al. vs. Jordan—Argument of Counsel.

certainly did not give the court of chancery any power it did not have previous to the passage of the act. Then the inquiry must be, what powers did the court have to re-establish lost papers or records ?

The court of chancery certainly has power to relieve in certain cases of lost papers, but if there is any case where a court of chancery has re-established a record of a court of law, the counsel have failed to show it, but they simply content themselves by saying that it was so plain a proposition that the objection had never been made, but we do not think that *dictum* will satisfy this court. And the nearest we have been able to find any authority going in that direction, is in the case of Laurance vs. Laurance, 42 N. H., 109, and this in a case of mortgage for personal support, in which the court had original jurisdiction, and then it is put upon the ground that the deed was not recorded. 42 N. H., 109; 1 Story's Eq. Juris., 81, notes 7 and 84; 1 Dan. Chy. Pr., 576, 651.

The next nearest case we have been able to find is, in Lord Mansfield's time, the court of chancery was asked to rebuild a mill-dam, which was refused with this simple remark, that the court would turn them over to a court of law, which could try it, with directions to have the same tried. 3 Atk., p. 905.

The practice, so far as we understand it, is to set up papers or compel persons to carry out a contract by making a conveyance which they had agreed to make, or to enjoin parties from proceeding upon illegal papers.

But to re-execute papers, or make record of courts of law, there is no such precedent, that we have been able to find. The nearest is the isolated case of 42 N. H., 109, and the authority there cited. There certainly is no such authority for any such jurisdiction in the common elementary books. 1 Story's Eq. Pl., p. 80 to 90 ; 1 Dan. Chy. Pr., 576, 657.

The court will not understand us to say that the court of
22

:330 SUPREME COURT.

Keen, et al. vs. Jordan—Argument of Counsel.

chancery cannot relieve in cases of lost records, but we do say that where there is as plain and specific a remedy at law as there is here, a court of chancery cannot entertain jurisdiction; that a court of chancery cannot re-establish a whole record in a court of common law. And the present case shows the fallacy of such a thing, if it could be done. Here the proceedings are defective; præcipe is defective; the summons is defective, and will have to be amended. Well, now, how is this to be done? A court of chancery makes a decree that the record shall be re-established, and then goes on to decree that the same shall be the record in the case. The defendant comes into court and shows the præcipe and summons, and that, agreeable to the summons, he has satisfied the judgment against him, and that he paid the sheriff upon the execution fifty dollars, the amount summons was for; but the judgment asked to be rendered upon the record is for $147. The plaintiff wants execution for the balance of the money. Is this court going to establish this judgment, and order an execution to issue? Why not follow the statute of the State, (which is so plain that it cannot be misunderstood,) to re-establish lost papers? Why go into chancery? There must be some reason, where there is so little authority for one, and the other is so clear.

It is certain that the objection is so clear, upon the first point, that it must be sustained, or the 23rd Rule means nothing.

But the case which is most similar to this, and which clearly shows that this court intends that a court of chancery shall not have jurisdiction where there is a remedy at law, is the case in 8 Fla., of Robinson & Roulhac vs. Yon and others. 8 Fla., 350.

*J. J. Finley* for Appellee.

1. It is urged, in behalf of the appellee, that the demurrer in this case was properly overruled by the chancellor in the court below, because said demurrer was not accompanied by

the certificate of counsel that in his opinion it is well founded in law, as required by the 31st Rule of Chancery Practice. Index to Fla. Rep., 208.

2. It is also contended that the filing of the demurrer was a waiver of process and service, and that it cured the irregularity, (*if irregularity it be,*) in not setting out the names of the defendants in the prayer for process.

3. Before the passage of the acts of the Legislature conferring upon the courts of law jurisdiction to re-establish lost or destroyed papers or records, it cannot be doubted that courts of chancery had and exercised such jurisdiction, and it is submitted that none of these acts of the Legislature take away or destroy this jurisdiction in courts of chancery.

4. It is a settled principle that when a court of chancery is clothed with jurisdiction, and a like jurisdiction is conferred on a court of law by an act of the Legislature, it will not have the effect to disturb or destroy such chancery jurisdiction, unless such act of the Legislature shall, in clear and express terms, take it away.

RANDALL, C. J., delivered the opinion of the Court.

The appellee filed a bill in chancery in the Circuit Court of Columbia county, praying that the record of a judgment recovered at law against the appellants in the Circuit Court of that county, and an execution issued thereon, which had been destroyed by fire, might be re-established or supplied by copies thereof, and that a copy of the execution might be placed in the hands of the Sheriff in lieu of the original.

The bill alleges, that in April, 1866, the complainant "instituted an action of debt against William R. Keen, Elias E. Johnson and William J. Barnett," &c. The prayer for process is as follows: " Your orator prays that the usual process may issue to the *said defendants* according to the rules and practice of this honorable court." The bill is signed by a solicitor but not by counsel.

The appellants demurred to the bill on the ground—1st.

That they are not proper parties to the bill; and 2d. That the complainant has not stated a case entitling him to relief in this court, for that he had a full and perfect remedy at law. The demurrer is signed by solicitors, but has no certificate of counsel that "it is well founded in point of law."

The record states, that the "cause coming on to be heard *upon the demurrer* of the defendants to the complainant's bill, and the court having heard the arguments of counsel for both parties therein, it is ordered, and adjudged, and decreed, that the demurrer be and the same is hereby over-ruled." From the order over-ruling the demurrer, the defendants appealed.

I. The appellants call attention to the fact, that the prayer for process of subpœna does not contain the names of these defendants, or of any other persons, and that therefore the bill is demurrable.

Rule 23 requires that "the prayer for process of subpœna in the bill shall contain the names of all the defendants named in the introductory part of the bill."

An omission of the names of the defendants against whom process of subpœna is prayed, is a defect in the frame or form of the bill, which may be taken advantage of by demurrer. Story's Eq. Pl., § 527, 528, 642; Mitford's Eq. Pl., 113. This bill is clearly liable to this objection, as the names of the persons intended to be made defendants in chancery are not named as such, either in the introductory part or in the prayer for process.

The appellee however suggests in his brief, that the demurrer was properly overruled, because it was not accompanied by the certificate of counsel, that in his opinion it is well founded in law, as required by the 31st Rule of Chancery Practice. This objection of the appellee relates to an irregularity of which he should have taken advantage by motion to strike off the demurrer. Upon an appeal, parties cannot take advantage of any irregularity which they have either consented to or waived. 1 Barb. Chy. Pr., 396. Here

the parties proceeded to argument and judgment upon the demurrer, thus waiving this irregularity. The demurrer was *overruled* by the court, not struck off or disregarded. Where a defendant is guilty of an irregularity in filing a demurrer, the plaintiff may, on application, obtain an order to take the demurrer off the files, but not that the demurrer be overruled. 1 Dan. Chy. Pr., 617–18.

If the point may be made at this stage, the defendants might also insist that the complainant's bill (which is not signed by counsel) be struck off the files. In Gove vs. Pettis, 4 Sand. Chy. R., it was held that a demurrer could not be taken for an omission of the signature of counsel or solicitor to a bill, but that it was a fit subject for a motion to take the bill from the files; and in French vs. Deer, 5 Vesey, 547, where a bill was demurred to for other causes, the Lord Chancellor abruptly refused to examine the bill, because it was not signed by counsel, and ordered it struck off, and the plaintiff to pay costs. Daniell's Chy. Pr., 588, and Barb. Chy. Pr., I, 44, say, however, that the want of signature of counsel to the bill is ground of demurrer. Either practice seems to be tolerated. The application to strike off the demurrer should have been made to the court below, where the irregularity might have been cured by the parties.

II. The second ground of demurrer is, that the plaintiff is not entitled to relief upon the case stated in the bill, and the question presented is: Has a court of chancery jurisdiction to supply to another court a record of the latter in place of one which has been destroyed by accident? The jurisdiction of the court of chancery, arising from accident, is a very old head of equity, and perhaps coeval with its existence. But every case of accident will not justify the interposition of a court of equity. The jurisdiction will be maintained only—first, when a court of law cannot give suitable relief, and secondly, when the party has a conscientious title to relief. Both grounds must concur in the given case, for

otherwise a court of equity not only may but is bound to withhold its aid. 1 Story's Eq. Jur., 79.

Is there then not merely some remedy, but is there adequate remedy at law? The Legislature, in cases like this, has provided a method of supplying records which have been destroyed or lost; but in such cases, if the court of chancery ever had jurisdiction, the legislative provision of a remedy will not take away the jurisdiction of equity, unless by express prohibition, (Case vs. Fishlack, 10 B. Mon., 40,) for otherwise, a court of law might oust a jurisdiction rightfully attached in equity.

The jurisdiction of the court of chancery in the case of lost instruments, as bonds, deeds, &c., was founded upon the doctrine that there could be no remedy, because there could be no *profert* of the instrument, without which a declaration would be fatally defective. And there was another ground for the interfence of a court of equity, and that is, that no other court could furnish the same remedy with the fit limitations which might be demanded for the purposes of justice, by granting relief only upon the party's giving a bond of indemnity; a court of law being incompetent to require such a bond as a part of its judgment. 1 Story's Eq. Jur., 82. On the latter ground also, courts of equity had jurisdiction of remedies upon negotiable instruments which were lost or destroyed, for a court of law required that the plaintiff suing upon negotiable paper should produce it at the trial, which he could not do if it were lost. Willard's Eq. Jur., 52; Story's Eq. Jur., § 85.

In coming into equity upon a lost bond or covenant on negotiable instruments, the party must have some object beyond the mere decree of the existence and loss of the paper; he must be entitled to some relief or protection from the court beyond the establishment of the instrument. In the case of a lost bond or note, he may have a decree for its enforcement and satisfaction. If a deed concerning land is lost, and the party prays discovery and to be established in

possession under it, equity will relieve, for there is no remedy at law; and where the plaintiff is out of possession, there are cases in which equity will interfere upon lost or suppressed title deeds, and decree possession to the plaintiff; but in all such cases there must be other equities calling for the action of the court.   1 Ves., 434-35; 3 Atk., 132; 1 Fonblanque's Eq., B. 1, ch. 1, sec. 3; id., ch. 3., sec. 3.   These citations sufficiently indicate the grounds of equity jurisdiction in the cases of lost or destroyed papers, without farther illustration.

The power of supplying a new record when the original has been lost or destroyed, is one which pertains to courts of record of general jurisdiction, independent of legislation. It is an inherent power in such courts, and has been acted upon in this State in Rhodes vs. Mosely, 6 Fla., 12, and in Pearce vs. Thackeray, decided at Jan'y Term, 1870.   In Douglass vs. Yallop, 2 Burrow, 722, a new judgment roll, for a judgment rendered thirty years previous to a motion to supply the loss, was ordered to be made.   In Jackson vs. Smith, 1 Caines, 496, a new *nisi prius* record was allowed to be made up on motion and affidavit that the original had been lost or burnt, after six years.   In White vs. Lovejoy, 3 Johns., 448, a *fi. fa.* on which a levy had been made was burnt, and the court ordered a new *fi. fa.* to be substituted. The power has been long and frequently exercised in Alabama.   McLendon vs. Jones, 8 Ala., 298; Doswell vs. Stewart, 11 Ala., 629; Dozier vs. Joyce, 8 Porter, 303; Williams vs. Powell, 9 Porter, 493; Wilkinson vs. Brandam, 5 Ala., 608; Lyon vs. Bolling, 14 Ala., 753; Bishop vs. Hampton, 19 Ala., 792; 3 Ph. on Ev., 1,066.

Upon the destruction of any part of a record or of the process, pleadings, or orders in a suit, the loss may be supplied by making up others in their stead, provided the court be reasonably satisfied that the proposed substitute is of the same tenor.   Upon that, the court where the suit is must exercise its own judgment.   Harris, *et al.* vs McRae's adm'r., 4 Iredell, 81.

The proceedings, in all the cases cited, were had in the absence of any statutory regulation, upon the acknowledged and necessary power of the court to control, amend, and supply its own records.

The jurisdiction invoked by the complainant in the present case has not been exercised by any court of chancery in this country or in England, (so far as we have been able to discover with our limited means of examination,) and the principles upon which the court takes jurisdiction in the cases of lost instruments, come far short of embracing this case. The inherent power of the courts to control their own records, and to supply losses therein, it seems is antagonistic to the power of any other court to interfere and make records for them. By this proceeding, one court of special jurisdiction is invoked to take cognizance of and to supply to another court of general jurisdiction a record, in lieu of one which has been destroyed. This power, once admitted, will place the records of the courts of common law at the mercy of the court of chancery, and might lead to an absurd conflict between the law and equity side of the court over the records of the court of common law: one party imploring the conscience of the one to seize the power of the other and control the history of its past action, and perhaps to compel the court of law to adopt and acknowledge as a fact a thing of which it may deny any knowledge, and against which action the other party may justly ask it to revolt and treat as an usurpation, because its own power is ample and adequate.

There is nothing here requiring the exercise of the conscience of the court which may not be attained by a simple proceeding according to the course of the common law, and therefore chancery has no office to perform.

The decree of the court overruling the demurrer must be reversed upon both grounds of demurrer.