# Lilly *v.* Larkin.

*Application for Substitution of Lost Records, in matter of Annual Settlement of Administrator's Accounts.*

1. *Substitution of records in Probate Court.*—Every court of record possesses an inherent power to substitute any part of its records which may have been lost or destroyed; and the Probate Court, being a court of record, may exercise this inherent power, although it is not among the courts enumerated in the statute providing for the substitution of lost or destroyed records (Code, §§ 555-58), which is merely cumulative to the former remedy and practice, as indicated in *Adkinson v. Keel*, 25 Ala. 521.

2. *Same; admissibility of parol evidence; revision of decree on error.*—On an application for the substitution of lost or destroyed records, parol evidence is admissible; and the court below having examined the witnesses *ore tenus*, and thus having peculiar opportunities for judging of the credibility and weight of the evidence, the appellate court is not inclined to reverse its finding on the facts, unless clearly convinced that it is erroneous.

3. *Same; defects in original record or decree.*—The fact that the lost or destroyed record, being a decree rendered on an annual or partial settlement of an administrator's accounts, was rendered without the appointment of a guardian *ad litem* for the infant distributees, or other defect of like character, does not affect the right to substitute; the record, when substituted, possessing the same validity as the original, and neither more nor less.

4. *Entries or memoranda made by deceased person.*—A promissory note having been used as a paper on the settlement of an administrator's accounts, an indorsement written on it by his attorney is properly received in evidence, on motion to substitute the settlement as a lost record, either to identify the paper, or as original evidence to support the correctness of the settlement proposed to be substituted, on proof that it was written at the time of the former settlement, and that the attorney is deceased.

4. *Competency of party as witness, in proceeding by administrator for substitution of lost record.*—On an application by an administrator for the substitution of a record alleged to be lost or destroyed, being an annual or partial settlement of his accounts, he is a competent witness for himself to prove the correctness of the record proposed to be substituted: such evidence is not within the statutory prohibition (Code, § 3058), as to the proof of transactions with a deceased person whose estate is interested in the result of the suit.

APPEAL from the Probate Court of Jackson.

This was a petition, as the bill of exceptions states, "by W. R. Larkin and John V. Gross, to substitute the alleged lost record of an annual settlement of their administration of the estate of Edward H. Dillard, deceased, alleged to have been made in said court on the 15th July, 1861." The petition asking the substitution, verified by affidavit, was filed on the 21st December, 1876; and notice of the application having been given to the heirs and distributees of said Dillard's estate, they appeared and contested it. "On the hearing of the cause," as the bill of exceptions recites, "the petitioners read in evidence the records of the court, from the minute-books thereof, of the filing of their accounts and vouchers for an annual settlement of their administration of said estate, on the second Monday in April, 1861, and the setting of the same for hearing on the third Monday in May, 1861; also, of an annual settlement of their said administration, made on the 9th July, 1866; and of their final settlement of their said administration, made on the 17th June, 1872." A copy of these records is made an exhibit to the bill of exceptions; and the account-current filed for the settlement made on 9th July, 1866, as copied, shows that the administrators therein charged themselves with $121.49, as "*amount on hand on annual settlement, July 15, 1861.*" "The petitioners read in evidence, also, an indorsement proved to have been written by Nelson Robinson, Esq., proved to be now deceased, but then the attorney of the petitioners in their said administration, on a note of said W. R. Larkin and others to said petitioners as such administrators"; which indorsement was in these words. "This note is entitled to a credit of 369.19, the proportion of W. R. Larkin's commissions on settlement of E. H. Dillard's estate, *this day had in the Probate Court, July 15, '61.*" The defendants objected to the admission of this indorsement, "as illegal evidence"; and they duly excepted to its admission against their objection.

On the account-current filed for the settlement in 1861, as copied in the exhibit to the bill of exceptions, is an indorsement in these words : "The above and foregoing account-current, between John V. Gross and W. R. Larkin, co-administrators of Edward H. Dillard, deceased, *audited, passed and allowed,* on annual or partial settlement of said estate, *had on this 15th day of July, 1861,* and ordered to be recorded as such this 15th July, 1861"; to which was signed the name of John H. Norwood, as probate judge. Said Norwood was introduced as a witness by the petitioners, and testified, "that he was the probate judge of said county, from prior to the year 1860 until after July, 1861; that the peti-

tioners made an annual settlement of their said administration, before him as such judge, between the months of May and August, 1861, but on what day he did not remember; that it was customary, on such settlements, to appoint the clerk of the Circuit Court as the guardian *ad litem* for the infant distributees ; that L. Brewer was then such clerk, but he did not recollect that any guardian *ad litem* was appointed on said settlement; that the estate had been under administration for [several] years, and his impression was that the account was large, embracing all matters of the administration up to the date of settlement. Witness was shown the indorsement upon said exhibit, of its being passed and allowed, and stated that it was usual to make such indorsements on accounts approved and allowed by the court. On cross-examination, said Norwood stated, against the objection of the petitioners," &c., that he left said county on the 28th March, 1861, having entered the military service of the Confederate States, returned to said county in May, and remained there until some time in August, 1861; "that the record entry of the second Monday in April, 1861, as to the filing of the accounts and vouchers and setting a day for the hearing, was not in fact made to him, but by his clerk, W. H. Norwood ; that he had no recollection of ever entering himself on the records any decree of said annual settlement of 1861, or of seeing any such entry on the records ; and that there was no break, or chasm, in the record of the minutes of the court, from said entry of the second Monday in April to August, 1861, and no entry on the minutes, between those dates, in relation to said annual settlement of July 15, 1861."

The petitioners were both allowed to testify as witnesses, against the objections of the defendants ; the objections to each being, "because of his being a party, and because of his being interested"; and exceptions were reserved by the defendants to the overruling of these objections. Each of said petitioners testified, that they made an annual settlement of their accounts in said court on the 15th July, 1861 ; that they were present at the settlement; that their accounts and vouchers as filed, embracing all·matters of debits and credits up to that day, were examined, audited, and allowed by the court. Each testified, that their accounts and vouchers were left with the probate judge, in his office, at the time of said settlement; and each stated, on cross-examination, that he had never seen any record of that settlement. Larkin "said that he was clear and distinct as to the date and character of said settlement, and named two circumstances which fixed the matter in his recollection : one was the indorsement as a credit on his note, for his share of the com-

[Lilly v. Larkin.]

missions allowed, being one third, which he saw written; and the other was the refusal of the probate judge to allow said Gross as large compensation for extra services, for attending to the plantation during the year the estate was kept together, as he claimed." Larkin further testified, that he had no recollection as to the balance ascertained on said settlement in 1861; but Gross stated, that a balance of $121.49 was then ascertained against the administrators, as recited in the settlement of 1866. Gross produced a book, in which he said he kept his accounts relating to said estate, and in which he had made an entry, at the time of said settlement in 1861, in these words: *"Annual settlement made with the Probate Court, July 15, 1861";* and he was cross-examined, against the objections of the petitioners, as to other entries in said book, and some apparent discrepancies between the debits therein shown and those stated in the account as stated in said settlement.

"The petitioners introduced as a witness W. B. Bridges, the present clerk of said court, who testified, that he had been such clerk for the past twenty-seven months, and was familiar with the books of said office; that he had made diligent search in the office for the papers and record of said annual settlement made on the 15th July, 1861, and failed to find them; that no such papers or records are in the office; that he had examined the final record books in the office, and did not find in them any record of said annual settlement; that there is a gap, or chasm, in the final record books of said office, in which annual and final settlements are recorded; that said gap, or chasm, begins about 1857, and extends to 1863; and that said final record books belonging to the office, of that date, were lost or destroyed by casualties of war. Said Bridges testified, also, that there was no gap in the records of the minutes of the court, from the second Monday in April, 1861, up to August, 1861; and that said record of the minutes of the court, during that period, contained no entry in relation to the estate of said Dillard, or any settlement thereof, other than said entry of the second Monday in April, 1861." The record of the minutes of the court, between the second Monday in April, 1861, and August, 1861, was read in evidence by the defendants, against the objection of the petitioners; "and said record showed that there was no gap in the minutes during that period, and that it contained no entry in relation to said Dillard's estate, during that period, nor any settlement thereof, after said entry of the second Monday in April, 1861."

"This being all the evidence, the court granted the application of the petitioners; to which decision and judgment

(8)

the defendants excepted," and which they now assign as error, together with the other rulings to which, as above stated, they reserved exceptions.

CABANISS & WARD, and CLOPTON, HERBERT & CHAMBERS, for appellant.

WATTS & SONS, and ROBINSON & BROWN, *contra.*

SOMERVILLE, J.—Every court of record possesses an inherent power to substitute any part of its records, which have been lost or destroyed ; and this power existed at common law, independently of any statutory provision.—*Bishop v. Hampton*, 19 Ala. 792 ; *Doswell v. Stewart*, 11 Ala. 629; *Town of Camden v. Block*, at the present term.

The former practice, in such cases, was indicated by this court in *Adkinson v. Keel*, 25 Ala. 551, to which the procedure authorized by the statute is evidently designed to be cumulative only.—Code (1876), §§ 555, 558 ; Freeman on Judg. § 89. See, also, *McLendon v. Jones*, 8 Ala. 298. Probate Courts are courts of record, and, although not enumerated expressly among those authorized by statute to substitute lost or destroyed records, they yet retain this inherent and self-preserving power unimpaired.—Code, §§ 555, 558.

The allegations of the petition in this case, we think, were sufficiently sustained by the evidence, to authorize the substitution of all records and *quasi* records appertaining to the estate in question, and satisfactorily shown to have been lost or destroyed. Parol, as well as other proper evidence, was admissible for this purpose. The court below, having examined the witnesses *ore tenus*, had peculiar opportunities for judging of the credibility and weight of the evidence ; and we are not inclined to reverse the finding of a primary court on the facts in such cases, unless clearly convinced that it was erroneous.

The fact that a settlement may have been allowed, without the appointment of a guardian, or other defect of like character, would not affect the right to substitute the record. The substituted record possesses just the same validity as the original, and neither more nor less ; and it is no part of the court's duty to consider a collateral issue of this character, on hearing and determining the application to substitute.

The indorsement in writing on the note of Larkin, whether admitted to identify the paper, or as original evidence to support the correctness of the substituted settlement, was properly allowed to be proved. It was shown to be in the

[McDonald v. McMahon's Adm'r.]

handwriting of the attorney for the administrators, *who was deceased*, and was proved to have been made at the time of the annual settlement.—*Union Bank v. Knapp*, 3 Pick. 96; *S. C.*, 15 Amer. Dec. 181, 191, *note*; *Leland v. Cameron*, 31 N. Y. 119.

The petitioners, Larkin and Gross, were competent witnesses to prove the records, proposed to be substituted, notwithstanding the fact of their being parties to the proceeding. It was not offered to prove by either of them any transaction with, or statement by the deceased, within the prohibition of the statute, and they were competent to prove any other material and relevant fact.

We find no error in the record, and the judgment of the Probate Court is affirmed.

BRICKELL, C. J., not sitting.