(93 South. 886)

## WISE v. STATE et al. (4 Div. 991.)

(Supreme Court of Alabama. June 29, 1922.)

**1. Records ⊂⇒17(1)—Code provision for substitution of judicial records inapplicable to lost tax assessment.**

Under Code 1907, § 5732 et seq., dealing with records judicial, section 5741, providing for substitution of the papers and records in a cause, as not intended to apply to substitution of lost tax assessments.

**2. Records ⊂⇒17(2, 3)—Inherent power exists in courts to restore lost records.**

The inherent power in a court of jurisdiction to restore and establish its lost records exists independently of statute.

**3. Records ⊂⇒17(1)—Right of restoration of court records extends to whole.**

The right of restoration of lost court records extends to the whole or a part, but where a part is substituted it must be consistent with the part remaining, and, as substituted, must not alter or vary its legal effect.

**4. Records ⊂⇒17(2, 3)—Power of substitution exists either before or after judgment.**

The power of substitution of lost court records exists either before or after judgment.

**5. Lost instruments ⊂⇒16—Destruction of instrument giving right will not destroy right.**

The mere destruction by another of an instrument giving a right, title, or lien will not destroy that right, title, or lien, which may be declared and enforced in a court of competent jurisdiction.

**6. Records ⊂⇒17(2, 3)—Equity in enforcing tax lien will substitute lost record.**

Gen. Acts 1919, p. 449, § 416, provides that tax liens may be enforced and foreclosed under the act or as other liens upon property are foreclosed; and, the statutory mode of enforcing a lien under Code, § 4829, not being exclusive, in a proceeding to enforce a tax lien where the records were lost, and where under the facts averred it was necessary to enforce in equity irrespective of whether it might be enforced under any other remedy, equity, having taken jurisdiction for the purpose of enforcing the lien, will give relief by substituting the record.

**7. Equity ⊂⇒44—Chancery will not enforce tax lien where its jurisdiction conflicts with other courts.**

Though chancery is given concurrent jurisdiction generally to enforce liens under Acts 1919, p. 449, § 416, and Code 1907, § 4829, it will not exercise jurisdiction where it would result in a conflict of jurisdiction with the probate or county commissioners' court or board of revenue.

**8. Equity ⊂⇒115—Proper to bring in all lienholders in action to enforce lien.**

When a lien is sought to be enforced by a bill filed by the first or superior lienholders, it was proper to bring in subsequent lienholders as parties, so that a full decree may be rendered as to respective rights of all parties in interest before the court.

Appeal from Circuit Court, Coffee County; A. B. Foster, Judge.

Bill by the State of Alabama and County of Coffee against Ed Wise to establish and enforce a tax lien. From a decree overruling demurrers respondent appeals. Affirmed.

J. A. Carnley, of Elba, for appellant.

A court of general jurisdiction has an inherent power to substitute its own records; but such court has no such power over the records of other courts. Code 1907, § 5739; 48 Ala. 48; 149 Ala. 658, 42 South. 1017; 34 Cyc. 607; 43 Ala. 77; 25 Ala. 551; 50 Ala. 356. Complainants had an adequate remedy at law. 34 Cyc. 606; 37 Cyc. 1280; 71 Ala. 529; 84 Ala. 236, 4 South. 135. Where a lien is given by statute in derogation of the common law, and a means also of enforcing it, the statute must be strictly construed. 113 Ala. 292, 21 South. 387, 36 L. R. A. 308; 17 Ala. 496; 73 Ala. 390; 80 Ala. 245; 200 Ala. 287, 76 South. 53.

W. W. Sanders, of Elba, for appellees.

The fact that the tax records were lost or destroyed does not defeat the right of the state to recover its taxes based thereon. 64 Ala. 34; 25 Ala. 265; 45 Ala. 204; 84 Ala. 546, 4 South. 200, 866; 81 Ala. 216, 1 South. 74; 72 Ala. 7; 65 Ala. 142; 25 Ala. 551. Courts of equity have jurisdiction to restore lost or destroyed records. 34 Cyc. 606; 10 R. C. L. 367; 17 R. C. L. 1170.

THOMAS, J. The bill was to establish and enforce the lien of the state and county for taxes on land. The averments thereof do not show assessment of personal property, or that respondent owned personal property within the county, and he is not a citizen of Coffee county, where the land is situated. The original tax records containing this assessment were lost or stolen from the courthouse. It is averred that the exhibit is a substantial copy of such original assessment of respondent's land for taxes, and that said taxes are due and unpaid for the year beginning October 1, 1920. The bill concludes with interrogatories to respondent with respect to the exact nature and purport of the assessment of his lands in that county; and contained appropriate prayer for substitution, the establishment of existence of the lien for state and county taxes on the land embraced in the tax list exhibited and that described in the bill, for a sale of the same for the payment of accrued taxes for the tax year 1920–21, and a prayer for general relief. Grounds of demurrer challenge the bill generally and on

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

grounds that a court of equity is without jurisdiction to substitute the tax records in question or to sell the land for taxes; that the state and county have no authority to maintain such a suit.

[1] Under chapter 132 of the Code of 1907, p. 1331 et seq., dealing with "Records, Judicial," provision is made for substitution if, after the determination of any civil cause or proceeding, the original papers or any part thereof pertaining thereto, which are not of record, are lost or destroyed; or if the record of such papers, with such papers, should be lost or destroyed; or if the record of any judgment or decree, or of any judicial proceeding, or quasi judicial proceeding, or any part thereof should be lost or destroyed, any party in interest may, on application in writing, stating the facts, accompanied with the substitution proposed of such lost or destroyed paper or record, verified as required, "obtain an order of substitution" on notice; and it is provided that on the hearing the court may receive affidavits and counter affidavits as to the correctness of the proposed substitute (section 5741); and if there is judgment of substitution appeal is provided therefrom. (Section 5744; Worrell v. State, 15 Ala. App. 126, 72 South. 601). These statutory proceedings were applicable to the subjects there dealt with, and the provisions of section 5741 were not intended to apply to substitution of lost tax assessments such as that exhibited.

The records in question are a part of the basis of, or jurisdictional fact on which must rest, the state's right to collect the taxes on property, and such a record is ofttimes the foundation of title to property purchased by strangers at tax sales. Clark v. Eagerton (Ala. Sup.) 93 South. 455.[1] After the due assessment of taxes, and after the time provided for a review thereof, and after the expiration of the tax year, the county officials having to do with assessments and revisions thereof have no authority to reassess properties not to be classed as escapes. State v. Doster-Northington Co., 196 Ala. 447, 71 South. 427. The power of commissioners' courts to supply and establish lost county records was maintained in Clark v. Eagerton, supra.

In the instant case the original jurisdiction of equity to substitute or establish the existence of a lost or destroyed tax assessment is asserted in the effort to ascertain the amount of the tax lien and its enforcement in equity. The establishment of the existence of the valid assessment and the discovery of its extent and nature by resort to a court of equity for such purpose have the practical effect of furnishing the conclusive evidence of former existence of such jurisdictional fact and to dispense with

the necessity of thereafter resorting to secondary evidence in its proof, as by purchaser at such tax sale. May v. Parham, 68 Ala. 253; Peddy v. Street, 87 Ala. 299, 6 South. 3; Ward v. State, 78 Ala. 455; Whitney v. Jasper Land Co., 119 Ala. 497, 500, 24 South. 259.

[2-4] The inherent power in a court of general jurisdiction to restore and establish its lost or destroyed records exists, under the common law, independently of statute. Pruit v. Pruit, 43 Ala. 73; Smith v. Ivey, 48 Ala. 48; Adkinson v. Keel, 25 Ala. 551; McLendon v. Jones, 8 Ala. 298, 42 Am. Dec. 640; Wilkerson v. Branham, 5 Ala. 608; Williams v. Powell, 9 Port. 493; Dozier v. Joyce, 8 Port. 303; Ala., etc., Co. v. Ventress, 149 Ala. 658, 42 South. 1017; Lilly v. Larkin, 66 Ala. 110, 114; Dabney v. Mitchell, 54 Ala. 198; Taylor v. McElrath, 35 Ala. 330; Doswell v. Stewart, 11 Ala. 629. So of the records of a court to which such a court succeeds. Taylor v. McElrath, supra; Bishop v. Hampton, 19 Ala. 792. This right of restoration extends to the whole or part of a record. Where a part of a record is substituted, it must be consistent with the part remaining, and as substituted must not alter or vary its legal effect. Bishop v. Hampton, supra. The power of substitution exists either before or after judgment. Taylor v. McElrath, supra; Doswell v. Stewart, supra; Wilkerson v. Branham, supra; Williams v. Powell, supra.

Under his treatment of concurrent jurisdiction of equity, Mr. Story said:

"The jurisdiction of the court arising from accident, in the general sense, * * * is a very old head in equity, and probably coeval with its existence. * * * The jurisdiction, being concurrent, will be maintained only: First, when a court of law cannot grant suitable relief; and, secondly, when the party has a conscientious title to relief. Both grounds must concur in the given case; for otherwise a court of equity * * * is bound to withhold its aid."

And the author quotes the observation of Mr. Justice Blackstone that—

"Many accidents are supplied in a court law; as loss of deeds * * *. And many cannot be redressed even in a court of equity. * * *" 3 Black. Comm. 431. Story Eq. Jur. (13th Ed.), p. 88, § 79; Id. (14th Ed.), §§ 119, 120.

What is embraced in the word "accident" as a ground for equitable jurisdiction and power of intervention is stated by Mr. Story (14th Ed., §§ 119, 125) to mean:

"Not merely inevitable casualty, or the act of Providence, but what is technically called vis major, or irresistible force; but such unforeseen events, misfortunes, losses, acts, or omissions as are not the result of any negligence or misconduct in the party."

Using the loss of a deed, for example, that author says it must be established that

---

[1] 207 Ala. 491.

there is no remedy at all at law or no remedy that is adequately adapted to the circumstances of the case before a court of equity will afford a remedy; and, the author says, the bill must always lay some ground besides the mere loss of a title deed, or other sealed instrument, to justify a prayer for relief—

"as that the *loss obstructs the right of the plaintiff at law, or leaves him exposed to undue perils in the future assertion of such right.*"

The text from Story is made the subject of discussion in Keen v. Jordan, 13 Fla. 327, where it is declared that the authority is in the chancery court to establish a record when the original has been lost or destroyed; that the authority, though inherent in it as a court of general jurisdiction, may not be exercised to do what another court may do for itself, for the reason that it seems "antagonistic to the power of any other court to interfere and make records for them," and, maintaining the inherent power of a court of chancery to 'establish and substitute a lost record, yet that right was denied to establish a record for the circuit court.

Announcing that it has been held "that there is no jurisdiction in equity to supply or establish the records of a court of law 'which have been lost or accidentally destroyed," Mr. Pomeroy (2 Pom. Eq. Jur. [3d Ed.] § 827) concludes with the recognition of this inherent jurisdiction of the chancery court by saying:

"It seems * * * that a court of equity may, by a suit between the persons interested, confirm the title of a party, vest it in him by decree, and grant him all needed relief, when the records of a court ordering a judicial sale upon which that title depends have been lost," on authority of our case of Garrett v. Lynch, 45 Ala. 204, 214.

The Chief Justice there said:

"If the records and decree cannot be substituted under the statute, as we think they may, on the evidence disclosed in this case, so as to enable the purchaser to obtain a title in the probate court, on a proper application, a court of chancery, on the payment of the purchase money, or an offer and readiness to pay it, would, undoubtedly, either decree him a title, or direct the administrator to make him one."

Mr. Pomeroy gives illustration of instances of the exercise of the jurisdiction to establish, supply, or substitute a record or paper in a proper case of the "long-settled group" of suits brought to recover the amount due on lost bonds and other sealed instruments—suits on negotiable bills, notes, or checks, whether payable to bearer, indorsed in blank or not, lost before maturity. In his general discussion of equitable jurisdiction he states that—

"Accident" is "one of the oldest heads of equity jurisdiction"; that its existence involves two essential requisites—"that by the event, not

expected nor foreseen, one party, A., has without fault and undesignedly undergone some legal loss or liability, and the other party, B., has acquired a corresponding legal right, which it is contrary to good conscience for him to retain and enforce against A. * * * because of the unexpected character of the occurrence by which A.'s legal relations towards B. have been unintentionally changed, A. is in good conscience entitled to relief *which shall restore those relations to their original character, and replace him in his former position,*" if "this relief to which A. is conscientiously entitled * * * cannot be adequately conferred by courts of law." 2 Pom. Eq. Jur. (3d Ed.) § 824.

See, also, vol. 1, §§ 276, 281.

Such is the case for decision by a court of equity. The tax records substantially exhibited being essential to the existence of the obligation of the taxpayer to pay the tax as required by law it follows that in order to render a decree establishing a tax lien, it is necessary that the record of the tax return for the year 1920 should have duly existed, and its loss or destruction without complainant's fault proven. The proof of the existence of the record is essential for all practical purposes of this suit in equity, to the establishment of its former existence and its substitution for the lost or destroyed record, as affecting the state's right to sell the land in satisfaction of taxes due thereon, and the title to the land in the purchaser at tax sale.

In Bailey v. Folsom, Tax Collector, 207 Ala. 329, 93 South. 479, is the declaration that—

The bill admits the perfection of a lien on complainant's properties "in consequence of valid assessment for taxation. The subsequent loss or destruction of the evidence of such lien did not annul the lien, though according to the bill's allegations, the exact amount (taxes) of the lien was thereby rendered unobtainable from competent record evidence."

The bill was dismissed on grounds that complainant taxpayer had an adequate remedy at law. The purpose of instant suit was to establish by competent evidence—the respondent's own evidence in response to interrogatories incorporated in the bill—the exact nature and extent of the assessment duly made and returned by him on his properties made the subject of the suit. Sims, Ch. § 666. If it should be conceded, for the argument, that the prayer of the bill was not wholly appropriate or sought unwarrantable relief—substitution of lost record—it was not demurrable, where it otherwise appeared sufficient in that it contained a proper prayer for relief, the enforcement of a lien on lands under circumstances indicated in the bill. Pickens v. Clark, 203 Ala. 544, 84 South. 738; Wilks v. Wilks, 176 Ala. 151, 57 South. 776. That is to say, if the chancery court had not the power primarily of substituting the "tax return list," the relief prayed for may nevertheless be accorded by reason of

the valid assessment and the attaching of the lien to the land for taxes.

[5] The mere destruction by another of an instrument giving a right, title, or lien will not destroy that right, title, ' or lien, which may be declared and enforced in a court of competent jurisdiction. Clark v. Eagerton, supra; Bailey v. Folsom, supra.

The cases of Gilchrist v. Shackelford, 72 Ala. 7, 13, and Smith v. Wert, 64 Ala. 34, are analogous. In the latter case, during the course of administration in the probate court, lands belonging to the estate were sold at administrator's sale, and possession delivered to the purchaser, due orders to that end having been entered by the court. The records and proceedings thereof being lost or destroyed during the Civil War, an action of ejectment was brought against the purchaser, and an injunction, granted at the instance of the purchaser, restrained prosecution of the suit. The court said:

"When records become material in the determination of rights between parties, and those records are shown to have existed, and to have been afterwards lost or destroyed, their contents, like those of documentary evidence may be shown by testimony in its nature secondary." Garrett v. Lynch, supra; Derrett v. Alexander, 25 Ala. 265; 1 Greenl. Ev. § 509; 2 Pom. Eq. Jur. (3d Ed.), § 827.

On this principle, suits were maintained in Grayson v. Latham, 84 Ala. 546, 550 [2] (motion against county treasurer on county warrants having been made a matter of record and destroyed by fire); Williams v. Colbert Co., 81 Ala. 216, 220, 1 South. 74 (in suit for damages for injuries caused by defective public bridge, and the record of its authorization was destroyed and proved).

In a proceeding for mandamus to the State Auditor to certify assessments of taxes against a railroad company—where secondary evidence of the lost or destroyed records was received—referring to valid assessments of properties of public service utilities corporations required to be assessed and preserved of record in the office of the auditor being lost, Mr. Justice Stone said:

"They were records, and should have been preserved. But, if sufficient when made and filed, their destruction has not destroyed their efficacy, if the contents can now be established by proof. Parol testimony, if clear and satisfactory, is competent * * * to establish their existence, loss and contents." State Auditor v. Jackson County, 65 Ala. 142, 157.

[6] If there be doubt under the original or inherent jurisdiction of a court of chancery to afford relief in a case like this, the same is set at rest by section 4829 of the Code, declaring the jurisdiction and power to enforce liens. It is made the declared legislative policy that statutory modes of enforcement are cumulative merely, and the

same, may be enforced in the manner provided by statute (if so provided) or in equity, or by attachment for enforcing liens, or by any similar mode or remedy existing at common law. Bailey v. Folsom, supra; Henderson v. Steiner-Lobman, 202 Ala. 325, 80 South. 407; Mathis v. Holman, 204 Ala. 373, 85 South. 710; Bynum Mer. Co. v. First Nat. Bank, 187 Ala. 281, 65 South. 815. In Winter v. Montgomery, 79 Ala. 481, relief was granted for the enforcement of the lien for municipal taxes before the statute, because of the difficulty encountered in an effort to subject the land to payment of taxes in a proceeding at law, owing to the length of time the property had escaped taxation, the fact that the taxpayer was a married woman, and inability to subject her to a money judgment. While the Winter Case is not controlling, there is slight analogy to the instant facts. Stone, C. J., observed of the nature of a lien for taxes that—

"The liability to pay taxes imposes both a legal and moral duty, which can and should in no sense be assimilated to a statutory penalty. It is, in this case, and generally is, more than a mere legal and moral obligation. There is a lien on the property for its payment; a lien which adheres to it, no matter who may own the title; a lien which a bona fide purchase will not override."

The lien for taxes—state, county and city —is provided by statute (Gen. Acts 1919, p. 449, § 416), and declared to be "superior to all other liens" and to "exist in the order named"; and each of such liens may be enforced and foreclosed by sale for taxes as provided in this act, *or as other liens upon property are enforced.* Under the power contained in section 4829 of the Code, and the necessity for enforcement of the tax lien in equity under the averred facts, irrespective of whether that lien may be enforced under any mode or remedy existing at the common law, or provided by statute, a court of equity, having taken jurisdiction for one purpose, will afford complete relief. Hicks v. Meadows, 193 Ala. 246, 69 South. 432.

[7] The conclusion reached in the lower court was that the remedy provided by statute for the sale of property for taxes through the probate court or by action in assumpsit was not exclusive, and that, in a proper case for discovery, declaration, and enforcement of the lien by the exercise of the power conferred by statute on courts of equity, this course may be pursued. Code, § 4829. In a proper case, not involving a conflict of jurisdiction with other courts, as probate courts, boards of revenue, courts of county commissioners, etc., and under facts averred making necessary a discovery of the exact terms of the assessment list for taxes, there is no reason why the existing lien created by the valid assessment of the land, or by the return of the property for

---

[2] 4 South. 200, 866.

taxes (and fully known to respondent) should not be enforced in the circuit court, in equity, in behalf of the state and county, respectively and satisfied in the order of preference declared by statute. That is to say, though a court of chancery is given the concurrent jurisdiction generally to enforce liens under the statute (Acts 1919, p. 449, § 416; Code, § 4829), yet it will not be done if shown to that court that the exercise of jurisdiction would result in a conflict of jurisdiction with the probate court, or court of county commissioners or board of revenue of the county. In the instant bill facts are averred sufficient to show practical impossibility on the part of the probate court or court of county commissioners at this late day to proceed to a discovery of the true nature and extent of respondent's tax returns made by him to the officials of the county and state, and that this may be the more efficiently done by a court of equity in the exercise of its concurrent jurisdiction to the end of a just enforcement of state and county liens on the land described in the bill for said taxes for the respective years indicated.

The county of Coffee is a municipality of the state. Hill v. Moody (Ala. Sup.) 93 South. 422.[3] No difficulty is encountered by a joinder of state and county as complainants against this respondent, with reference to the lien created, respectively, for the state and county. Acts 1919, p. 449, § 416. The statute declares that the state shall have a prior lien upon each and every piece and parcel of property, etc., of the taxpayer, which shall continue until the taxes are paid; that, subordinate to the lien of the state, the county shall likewise have such a lien for the payment of taxes on such properties until payment; and, if the property be within the limits of a municipal corporation, such municipal corporation shall likewise have a lien, subordinate to the prior liens of state and county. Gunter v. Townsend, 202 Ala. 160, 79 South. 644.

[8] When a lien is sought to be enforced by a bill filed by the first or superior lienholder, it is proper to bring in subsequent lienholders or incumbrancers as parties, so that a just and full decree may be rendered as to respective rights of all parties in interest before the court. Hodge v. Joy (Ala. Sup.) 92 South. 171;[4] Winkleman v. White, 147 Ala. 481, 493, 42 South. 411; Gilman, etc., Co. v. Railroad Co., 72 Ala. 566. The learned trial judge properly decreed that the demurrer to the bill was not well taken, and that the same be overruled.

The decree is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.