# Jackson County *v.* Gullatt *et al.*

*Bill in Equity for Account by County against Tax-Collector and Sureties.*

| 84  | 243 |
| 126 | 339 |

1. *Direction to register as to statement of account; exceptions.*—Instructions to the register, as to the manner in which an account shall be stated, are interlocutory merely; and if deemed erroneous, a party may, by exceptions to the register's report, again call them to the attention of the chancellor, that he may alter or modify them; and not being altered by him when thus presented, assignments of error may be based on them, on appeal from the final decree.

2. *Tax-collector's warrant of authority.*—To authorize or justify compulsory proceedings for the collection of taxes, the tax-collector must have "warrant of law," or warrant of authority; but, under our revenue system (Code of 1876, §§ 395–435), no formal writ, execution, or other process, is required, his warrant of authority being found in a compliance with the statutory requisitions regulating the assessment of taxes, the delivery of a proper assessment book to the judge of probate, the correction of errors by the county commissioners, and a corresponding correction by the assessor, all duly certified by the judge of probate; and the corrected assessment book, thus certified, being delivered to the collector, he has due warrant or authority of the law to enforce the collection of taxes, although the judge of probate never makes out or delivers to him the abstract book required by section 435 of the Code of 1876.

APPEAL from Jackson Chancery Court.

Heard before the Hon. THOMAS COBBS.

The appellant, Jackson County, filed the original bill to force James M. Gullatt, who had been for two successive terms tax-collector of Jackson county, to account for the taxes which he had collected and should have collected while in office.

He had been elected to that office in 1874, and re-elected in 1877. The bill makes the sureties on his official bond parties defendant, and alleges that the defendant Gullatt had failed to account for large sums collected by him and

neglected to collect taxes that he was in duty bound to collect. Demurrers to the bill having been overruled, and the cause being at issue the Chancery Court, on the 23d of May, 1884, made a decree of reference to Mr. George S. Gordon, as special register, directing him to state the account between the complainant and Gullatt, as tax-collector, for each of the years from 1875 to 1879 inclusive, charging him with the amount of taxes for each year "with which he was legally chargeable and giving him all proper legal credits."

Mr. Gordon, as special register, made his report November 18th, 1884, that he found James M. Gullatt indebted to complainant in the sum of $3469.84.

The complainant and the defendant Gullatt each filed exceptions to this report, and on the 21st November, 1884, the case was submitted on the pleadings, proof, and the exceptions to report of the special register—the said submission being for "final decree."

On the 23d of Febuary, 1885, a decree was filed which set aside the report of the register—some of the exceptions being sustained—ordered a new reference and set aside the submission for final decree.

This last named decree gave directions for the guidance of the register which were inconsistent with the first decree of reference, and complainant filed a petition to have such directions modified.

On the second of October, 1885, the Chancery Court made a decree on this petition, holding that the first and second decrees of reference were inconsistent, and modifying the latter; and giving the special register instructions as to how the account should be stated. This last decree of October 2, 1885, modified the second decree of reference so as to make it consistent with the first, and then gave new directions as to the legal rules to govern the special register in the execution of the reference.

After the rendition of the last named decree the special register, Mr. D. W. Speake (Mr. Gordon being dead), re-stated the account, and on the 18th day of May, 1887, reported that there was nothing due from Gullatt to the complainant.

The complainant filed exceptions to this report. The case was submitted on the report of the special register, and on complainant's exceptions to the report, and for decree on the pleadings and proof.

[Jackson County v. Gullatt et al.]

This submission was set aside and the cause reinstated on the docket August 23d, 1887.

At the September term, 1887, the cause was submitted upon the report of the special register and the exceptions thereto. The court, in the final decree rendered September 28th, 1887, overruled the complainant's exceptions to the report and dismissed the bill. Complainant appealed.

The evidence shows that during the several years that Gullatt was collector the probate judge did not "make a book containing in concise form the amount of taxes due by each tax-payer, . . . showing the amount due on real estate and personal property separately," &c., as he was directed to do by section 435 of the Code of 1876.

Instead of complying with the letter of this section, the probate judge filled up the stubs in the stub-books described in section 410 of the Code of 1876. The collector received this stub-book without objection, and did not ask for anything else.

The final position taken by the collector and his sureties is, that he had no authority at all to collect taxes. That the failure of the probate judge to make out the book in "concise form," &c., under section 435, is fatal to complainant's right to · have the collector charged *prima facie* with the amount of taxes shown by the book of assessments; that the book prescribed by section 435 of the Code is the "warrant of authority" to the collector to collect taxes in this State. This position of the defendants was sustained by the court in the two last decrees of reference and in the final decree.

W. L. MARTIN, and D. D. SHELBY, for appellant.—The several decrees of reference referred to are all clearly interlocutory. They would not have supported an appeal, and can now be assigned as error.—*Walker v. Crawford*, 70 Ala. 567; *Stringfellow v. Ivie*, 73 Ala. 209. In Cooley on Taxation (2d Ed.), pp. 421 to 431, will be found a discussion of the tax-collector's warrant. It clearly appears to be a writ issued to the proper officer, signed by the board of assessors or other proper officer, and directing the collection of the taxes shown by the accompanying list.—Cooley on Taxation, *supra*. In Iowa, Mr. Cooley says, and probably in other States, a warrant is not required. Mr. Hilliard says: "In general, the collector's authority is a warrant from the assessors. This requisition, however, is often construed with much liberality."—Hilliard on Taxation, 401, § 17. An ex-

amination of section 435 will, we think, show that the book there referred to is in no sense a warrant to collect taxes. It is an abstract of the assessment book. It is not addressed to any one. It is not certified by any one. It only gives the name of each tax-payer, the amount of taxes due on personalty and realty separately, and the amount of fees. It is only a list compiled from the certified assessment book. When the taxes are duly levied and assessed, and the book of assessments is duly certified, it seems that in this State the statutes direct the collector to collect the taxes; that no warrant, such as is used in some States, is here provided for. Code of 1876, § 410; *Timberlake v. Brewer*, 59 Ala. 108, 122; *Dudley v. Chilton Co.*, 66 Ala. 593; *State of Alabama v. Lott*, 69 Ala. 147; *East v. Eichelberger*, 69 Ala. 187; *State v. McBride*, 76 Ala. 51; *State Auditor v. Jackson County*, 65 Ala. 142.

BRICKELL, SEMPLE & GUNTER, *contra.*—1. The main questions involved on this appeal, are whether a tax-collector can be charged for negligence in not collecting taxes when it is not shown that he had any warrant or legal authority to collect the taxes. 2. Whether errors can be assigned as to the decrees directing the Register how to state the accounts, on the idea that they are final, after the period for appealing had expired.

1. It is admitted that if any officer *de facto* makes an actual collection of taxes, no excuse for not paying can arise from any want of authority of any kind. But that question does not arise; there is no dispute as to taxes actually collected. The report of the Register shows that actual collections have all been accounted for. The difficulty is imputed negligence for not collecting. The answer to which is, that the warrant to the tax-collector to make these collections was never made out, by the officer invested and charged with the duty of so doing, and given to him. The tax-collector's duties to collect, do not involve the performance, or the compulsion by him of the performance, of the preliminaries essential to be performed by other officers before he is called upon to act. The tax-collector is in effect the sheriff, to enforce the writs of *fieri facias* placed in his hands for collection in the way of dues for taxes. If no judgment is rendered, or if the clerk fail or omits to issue a valid execution, the sheriff could hardly be charged for neglect in collecting. So, on the same principle, when a book

[Jackson County v. Gullatt et al.]

of assessments is to be made by a special and sworn officer—when that book is to be returned to a regular tribunal for correction, &c., one of which (the judge of probate), after the levy of the county tax, is to make out a book containing in concise form the amount of taxes due by each tax-payer, which book shall show the amount of tax on real estate and personal property, separately, &c., which book must be turned over by the judge to the tax-collector on or before the day when the taxes become due," and there is no other warrant or authority for the tax-collector to proceed on, how can the tax-collector be charged for not collecting, before this book has been made out and delivered or tendered to him? The necessity for a warrant in the tax-collector of some sort is admitted by all the authorities. "Before the officer, who is designated by law for the duty of collecting the taxes, can lawfully proceed to do so, he must have his warrant for the purpose, in due form of law." This, in different States, may be one thing or another. "Whatever the statute provides for, in this regard, the collector must have, and he is a trespasser if he proceeds to compulsory action without it. Upon this point the decisions are numerous and uniform. . . . No question is made anywhere of the correctness of this doctrine."—Cooley on Taxation, chap. 13, pp. 424–5. To same effect see 2 Desty on Taxation, 685–6 The law of Alabama provides for no other warrant to the tax-collector except the book required by § 435 of the Code of 1876. That book, it is conceded, was never made out and delivered or tendered to the tax-collector. But the judge of probate undertook to make out, and did make out, stub-books, such as the tax-collector would have on hand under § 410 of the Code of 1876, upon complying with that section. Would the possession by the tax-collector of stub-books already filled out, be any warrant for the collection of taxes by compulsory process? In other words, is a compliance by the judge of probate with § 410 of the Code, as to filling up stubs of receipts before the receipts are given or the taxes paid, any substantial compliance with sec. 435? We think not. Cited and discussed: *City Nat. Bank v. Moher*, 19 Blatch. 181; *Helbish v. Hower*, 58 Pa. St. 94.; 2 Desty on Tax. 685; *Timberlake v. Brewer*, 59 Ala. 122; *Dudley v. Chilton County*, 66 Ala. 593; *State v. Lott*, 69 Ala. 147; *East v. Eichelberger*, 69 Ala. 188. 2. The other question of importance in the case relates to the assignment of errors in the final decree rendered more than a year previous to the taking of the ap-

peal.—*Walker v. Crawford*, 70 Ala. 571; *Adams v. Sayre*, 76 Ala. 517.

CLOPTON, J.—The decrees of February, 1885, and October, 1885, are not such final decrees as will support an appeal. They are directions to the register, as to the manner in which he will take and state the account, which it was his duty to obey. If the directions were regarded as erroneous, and it was desired that the chancellor should review them, the complainant properly effected this by excepting to the report of the register and thus bringing the direction again to the attention of the chancellor; which it was in his power to modify or alter, if he deemed them unjust or incorrect.—*Lang v. Brown*, 21 Ala. 179. The motion to strike out the assignments of error relating to these decrees must be overruled.—*Walker v. Crawford*, 70 Ala. 567; *Stringfellow v. Ivie*, 73 Ala. 209.

There can be no question that a warrant of authority of some kind is necessary to enable the tax-collector to collect taxes by compulsory proceedings. In some States, a special or formal warrant is provided for. When the statute thus provides, the warrant must conform substantially to its provisions, and the statutory requirements as to its frame and issue should be carefully observed; as the collector is a trespasser, if he proceeds to compulsory action without the authority which the statute provides. Says Mr. Cooley: "This, in different States, may be the assessment roll or list, with the tax extended upon it; or it may be a duplicate of the list, with a like extension; or it may be either of them, with a formal warrant attached, particularly indicating what are his particular duties under it, and commanding their performance."—Cooley on Tax. 424. Where the statute makes provision for the attachment of a formal warrant to either, whether the assessment roll or the duplicate constitutes the warrant of authority, depends on the requirements, as to which the formal warrant shall be attached. The principles which govern in such cases, are scarcely applicable where the statutes, as in this State, make no provision whatever for a formal warrant. But, nevertheless, the collector must have a warrant of authority, to justify the compulsory collection of taxes.

By the revenue laws, in force during the time of the transactions in controversy, it was made the duty of the tax-assessor, to enter in a book, suitably ruled and substantially

bound, the names of persons assessed in each precinct, and the quantity and value of the real and personal property assessed to each person, and to extend and foot up the whole number, amount and value of each separate item entered therein, and the total amount of the assessment for the county; and also to make a book containing a list of all the persons in each precinct liable to poll-tax. These books the assessor is required to deliver to the judge of probate, by the first Monday in July. After the court of county commissioners has corrected any errors in the assessor's return, he is required to correct his books accordingly; and the judge of probate is required to certify thereon, that the same have been examined and corrected, the amount of the State and county tax separately, the total tax on property, and the total amount on polls.—Code of 1876, §§ 395–433. Section 435 provides; "After the court of county commissioners have received the books from the tax-assessor, and have corrected errors as provided for in this article, the probate judge must make a book, containing in concise form, the amount of taxes due by each tax-payer, which book shall show the amount on real estate and personal property separately, together with the fees of the assessor and collector, which book must be turned over by the judge to the tax-collector on or before the day when the taxes become due." The judge of probate did not comply strictly with this section, but instead thereof, filled up the stubs in stub-books, which contained all the matter which he should have put in the book required by the section, which books he delivered to the collector, who received and acted under the same. Appellees contend, that the book required by section 435 is the collector's warrant of authority, and indispensable to the compulsory collection of taxes; and as such book was not furnished to the collector, he and his sureties are not liable for taxes, which by reasonable diligence he could have collected, but failed to do so.

The question as to what constitutes the collector's warrant of authority under our statutes has never been directly presented or decided, though it has incidentally arisen in some cases. An examination of these cases will manifest, that the assessment book prepared by the assessor and certified by the judge of probate, and the book provided for by section 435, have been indescriminately regarded and styled the collector's warrant of authority. In *Timberlake v. Brewer*, 59 Ala. 108, the question for decision was, whether the collector was chargeable for the total amount of the

taxes, certified by the probate judge upon the assessors's books, or with the correct aggregate of the individual items therein. The court held that he was chargeable with the latter. It is said : "The assessment book, when delivered to the collector, is the authority and warrant on which he proceeds in the collection of taxes. Not authority and warrant for the collection of the amount of the taxes as shown by the aggregate value of the taxable property as certified by the judge of probate. It is authority and warrant for the collection, from each tax-payer, of the tax assessed on property to him, whether the aggregate, as shown by the certificate of the judge, is lessened or increased." It is apparent that the book referred to is the book of the assessor, this being the only assessment book to which the judge of probate appends a certificate, the only assessment book known to our statutes, and the only one offered in evidence or alluded to on the trial of the case. There was no evidence whatever relating to the book provided for by section 435. In *Dudley v. Chilton County* 66 Ala. 593, the question raised by the record, related to the admissibility in evidence of a book styled in the bill of exceptions the "assessor's book." The statements of the bill of exceptions left in obscurity, whether the assessor's book, or the book prepared and delivered by the judge of probate to the collector was intended. Either was held to be admissible, and it was said: "If, as is insisted, it be true, it was the first of these books which was received in evidence, we are not prepared to say that it was wholly irrelevant. The probate judge may not have made the second book, and if he had not, the first book would have been important to show the amount of taxes assessed—a fact it may have been necessary to prove in showing the amount of county tax the collector would have collected." The effect of the decision is, that on failure of the judge of probate to deliver to the collector the second book, the assessor's book would be competent evidence for the purpose of showing the amount of taxes with which the collector is chargeable. In *East v. Eichelberger*, 69 Ala. 187, the question was, the right of the assessor to receive commissions on special taxes levied for the purpose of rebuilding or repairing the county jail. In the opinion rendered there is an expression, that the book, which the judge of probate is required to make and deliver to the collector by section 435, constitutes his warrant of authority. The terms employed in these cases may be harmonized on the

theory, that under our statutes, the assessor's book, and the book provided for by section 435, or either of them, will be regarded as a sufficient warrant of authority; but these general expressions, used because convenient and concise, though sufficiently accurate for the special purposes of the particular case, were not designed, and are not comprehensive enough, to be a complete definition of the collector's warrant of authority to proceed by compulsory means.

We have said, that our statutes do not provide for a formal warrant, indicating the particular duties of the collector, and commanding their performance, nor authorizing him to resort to compulsory action for the collection of the taxes. He is authorized by the statute, without any special warrant, to levy on and sell the personal·property of delinquent tax-payers after the first day of January; and special provisions are made for the sale of real property for taxes by a decree of the probate judge. His authority to levy and sell personal property is based on the assessment as corrected by the court of county commissioners, and certified by the judge of probate. The book required by section 435 confers no authority to collect taxes by any compulsory process, though it may be regarded in the nature of a secondary warrant of authority to *receive* taxes voluntarily paid. It possesses none of the features or requirements of a warrant, and the statute does not, expressly or by implication, declare that such shall be its effect. It is a mere statement in concise form of the amount of taxes due by each tax-payer, and the amount of taxes on real and personal property separately, together with the fees of the assessor and collector—a memorandum made from the assessor's books. It is addressed to no officer, certified by none, and indicates no particular duties to be performed other than to receive the taxes, and is mainly intended for the information, guidance and convenience of the collector. Its office is, a constructive delivery of the assessment book, of which it is an unauthenticated abstract.

If there should be discrepancies between entries therein and the assessor's book, the latter controls; and should the probate judge, by inadvertance or design, enter therein taxes as due by a person and assessed on his property, when no such assessment had been made by the assessor, and entered in the assessment book, it would afford the collector no protection, if he knowingly attempted to force the payment of such taxes by levy and sale of property. The duty of the probate judge to make such book is clerical and ministerial,

the observance or non-observance of which does not injuriously affect the tax-payer, and being intended to promote convenience and dispatch in the collection of taxes, the statutory provision relating thereto must be regarded as directory. *Auditor v. Jackson County*, 65 Ala. 142. The legislature could not have intended to rest the collection of the revenue of the state on the performance of such duty by the various judges of probate, and we should not so declare, unless expressly or clearly implied.

A valid assessment is essential to the collection of taxes; but when such assessment has been made, the assessment book examined, corrected and properly certified, and the taxes become payable, the statute makes it the duty of the collector to proceed to receive the taxes, by making appointments in each precinct, which appointments must be completed by the thirty-first day of December; and after the first day of January he is authorized to compel the payment of taxes by a sale of personal property. This he can lawfully do, though the judge of probate may have failed to prepare and deliver to him the book as required by section 435. For this purpose no execution or special warrant of any character is requisite. His protection for such compulsory proceeding rests on a valid assessment, and the statutory duty and authority. In this State, where no special warrant is provided, and there is no statutory declaration as to what shall be the warrant of authority, the statutes which impose the duty to collect, and prescribe the modes of compulsory collection, when founded on a valid assessment, constitute, in its primary sense, the collector's warrant of authority, and no preliminary process or warrant is necessary. As the tax collector was authorized directly by the statute to proceed by compulsory action to collect the taxes, and as the book provided by section 435 is not essential to his protection, and having undertaken their collection by virtue of his office, he is chargeable with the taxes, which he could have collected, and failed to do.

Reversed and Remanded.