**CLARK v. EAGERTON et al., Com'rs.**
**(4 Div. 954.)**

(Supreme Court of Alabama. May 11, 1922.)

1. Counties ⊕113(4)—County commissioners' courts have not only power but duty to re-establish lost records.

Courts of county commissioners are endowed with all the legislative, judicial, and executive powers committed to the counties, and, though there is no statute expressly authorizing such commissioners' courts to supply lost county records, still there is an implied power and duty as well to see that indispensable records are re-established.

2. Counties ⊕113(5)—County commissioners authorized to employ counsel to establish lost tax records.

The clause of Gen. Acts 1919, p. 68, providing that "nothing herein shall be so construed as to limit or prohibit courts of county commissioners or boards of revenue from retaining or employing attorneys when it is deemed advisable or necessary and the agreed compensation to them may be paid as are claims to grand and petit jurors," is more than a limitation upon the scope of the act, and very clearly confers the authority to employ such counsel as they may deem advisable or necessary to establish lost tax records.

3. Counties ⊕196(4)—Payment of counsel and others restoring lost tax records by improper methods will not be enjoined.

Counsel and others, working at their direction in the restoring of county tax records that have been stolen, may exercise their discretion in the selection of methods, and a suit to enjoin the payment of their compensation because they are using improper methods will not lie, since adversely affected taxpayers have their remedy in the courts by resisting the taxes so levied.

4. Counties ⊕113(4)—Commissioners' authority to restore lost tax records not affected by state's interest.

The fact that the state is interested in the restoration of lost county tax assessment records and agrees to pay one-half of the cost of re-establishing them does not affect the authority of the courts of county commissioners to proceed in such matters.

Appeal from Circuit Court, Coffee County; A. B. Foster, Judge.

Bill by W. F. Clark against J. T. Eagerton and others, as members of the Commissioners' Court of Coffee County, the State Tax Commission, and Sanders and Brunson, to enjoin payment of expenses of substituting tax records. From decree dissolving temporary injunction and sustaining demurrers, complainant appeals. Affirmed.

The bill of complaint is filed by a taxpayer of Coffee county, and seeks, by writ of injunction, to prevent the court of county commissioners from paying any part of the ex-

penses incurred, or about to be incurred, by the authority of said commissioners' court acting on behalf of the county, in the establishment and substitution of new tax assessment records in place of the original records, which, the bill alleges, were stolen or removed from the courthouse at Elba on the night of February 18, 1920, and have not since been recovered, and also in the collection of the taxes due under said assessments for the year 1920.

The bill avers that the commissioners' court entered into an agreement with the state tax commission by the terms of which the state tax commission is to pay one half of the expenses incurred for the purposes stated, and Coffee county the other half; the agreement being evidenced by an order duly entered on the minutes of the commissioners' court.

The complaint is that the county tax assessor and tax collector, in conjunction with the state commission, are proceeding to act under said order, and have employed persons in Coffee county to aid them in "the purpose of establishing such assessments and collecting said taxes," and that they are not proceeding thereto in accordance with law, by a proceeding in a court of competent jurisdiction, but are undertaking to supply said assessments in many cases "either from memory, from outside information, or from guess."

It is further averred that, "as a part of the same scheme to establish the records lost and to enforce the collection of taxes in Coffee county," the commissioners' court made an order authorizing two members of the court, as a committee, to employ legal counsel for advice with respect to said matters; that said committee, pursuant thereto, has employed the law firm of Sanders & Brunson with a retainer of $300, and an agreement to pay them additional fees "for such other services in the way of lawsuits as might be rendered in and about the matters for which they were employed," and that said attorneys are proceeding to act under said employment, and will receive fees therefor from Coffee county on warrants which will be issued to them by said commissioners' court, unless prevented by writ of injunction.

The equity of the bill is grounded on the theory, as stated in the seventh and eighth paragraphs, that the commissioners' court was without authority to make the orders referred to; that it has no authority to incur such expenses to be charged to the county for the purposes named; and that it has no authority to employ attorneys at the expense of the county to represent the tax collector, tax assessor, and other tax officials of the county in such matters and for such purposes.

The several members of the commissioners' court, and of the state tax commission, and of the law firm referred to, are made parties defendant. The trial court sustained a demurrer to the bill for want of equity, and dissolved the temporary writ of injunction, which had been issued as prayed for. The appeal is prosecuted by the complainant from that decree and order.

W. O. Mulkey, of Geneva, J. A. Carnley, of Elba, and M. S. Carmichael, of Montgomery, for appellant.

The court of county commissioners was without authority to contract with the state tax commission to pay one-half of the expenses incurred in re-establishing lost tax records. 11 Cyc. 471 (e), and authorities on page 472. The county was without authority to employ attorneys to assist in the restoration of lost tax records. 9 Ala. App. 257, 62 South. 323; 99 Cal. 628, 34 Pac. 439; 104 Cal. 73, 37 Pac. 796; 112 Cal. 65, 44 Pac. 488; 218 Ill. 468, 75 South. 1024, 4 L. R. A. (N. S.) 339, 4 Ann. Cas. 136.

Harwell G. Davis, Atty. Gen., J. J. Mayfield, Asst. Atty. Gen., and W. W. Sanders, of Elba, for appellees.

Contract for part payment of expenses was validly entered into by the county. Code 1907, § 3313. Taxes being necessary to the operation of government, authority necessary to provide such essential belongs to some constituted authority; in the case of a county, no other official or body being designated by statute, the authority is in the court of county commissioners. 53 Ala. 25. The county has the authority to contract and create debts in the performance of functions for which it was created. 89 Ala. 641, 8 South. 30, 9 L. R. A. 497; 175 Ala. 391, 57 South. 823. Power of the county to sue and be sued implies authority to employ counsel and compensate therefor. 66 Ala. 184; Code 1907, § 123; Acts 1919, p. 68; 4 A. & E. Ency. Law (1st Ed.) 383; 97 Pa. 455; 15 C. J. 547, 548; 7 A. & E. Ency. Law (2d Ed.) 929 (3).

SOMERVILLE, J. [1] We have in this state no statute expressly authorizing commissioners' courts to supply and establish lost county records. But those courts are intrusted with all the authority and jurisdiction, whether legislative, judicial, or executive, committed by law to the counties. Commissioners' Court v. Moore, 53 Ala. 25. And in the exercise of its general powers of supervision and control over county affairs and county property there is not only an implied power, but an implied duty as well, to see that lost records, such as tax assessments, upon which the proper administration of county affairs vitally depends, shall be re-established.

The collection of taxes must be grounded upon duly authenticated assessments. Taxes have often been called the lifeblood of govern-

ment, without which it cannot perform its necessary functions, or even long endure. "Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public." Dows v. Chicago, 11 Wall. 108, 20 L. Ed. 65; Ala., etc., Ins. Co. v. Lott. Tax Col., 54 Ala. 499, 507.

Without the record of assessments, county officials cannot safely or effectively proceed with the performance of the essential duties enjoined upon them by law with respect thereto, and the whole scheme of property taxation is thereby frustrated.

[2] By the act approved February 13, 1919 (Gen. Acts 1919, p. 68), amending the act approved September 15, 1915 (Gen. Acts 1915, p. 548), which required state solicitors to give written opinions to every county official on all matters connected with their respective offices, it was declared that—

"Nothing herein shall be so construed as to limit or prohibit courts of county commissioners or boards of revenue from retaining or employing attorneys when it is deemed advisable or necessary *and the agreed compensation to them may be paid as are claims to grand and petit jurors.*" (Italics supplied.)

The amendatory language above quoted is more than a mere restriction upon the effect to be given to the language of the amended act; very clearly it confers the authority to employ counsel, and to pay them for their services, at their discretion, "when deemed advisable or necessary" in the administration of county affairs, and thereby enlarges and extends the implied power to employ counsel for the purpose of bringing or defending suits, as previously recognized and declared by this court in Jack v. Moore, 66 Ala. 184, and by the authorities generally. 4 A. & E. Ency. Law (2d Ed.) 383; 15 Corpus Juris, 547, 548.

As pointed out by counsel for appellee, the case of Walker v. Bridgforth, 9 Ala. App. 257, 62 South. 323, cited in brief for appellant, denied the authority of the commissioners' court to employ private counsel to aid in the prosecution of criminal offenses,— the county being in no sense a party to the prosecution, and only indirectly interested in the result, and the statutes making express provision for their prosecution by the circuit or county solicitor. That of course is a very different case from this, and the principles and reasoning which were correctly applied there can have no application here.

[3] It seems hardly necessary to add that the methods to be pursued by the attorneys employed in this case in the reconstruction of the assessment list must be left to their own professional wisdom and discretion, and cannot be controlled by the courts. If their methods should be lacking in diligence or skill, or if the results achieved should be ineffective or futile, the question of their compensation, and the amount to which they are entitled, would be one for adjustment between them and their employers, as it is in ordinary cases. If the lost assessments are not re-established in such a way as to be legally effective, taxpayers who are adversely affected will have their remedies in the courts by resisting the collection of taxes not shown to be based upon a valid assessment, or by resort to other appropriate procedure.

[4] The fact that the state is equally interested with the county in the reconstruction of the assessment list and the re-establishment of the last assessments, and has agreed through its Attorney General to bear one-half of the expenses to be incurred in that behalf, is without legal significance, so far as the authority of the commissioners' court is concerned.

It results from what we have said that the bill of complaint is without equity, and the demurrer for want of equity was properly sustained, and the temporary injunction was properly dissolved by the trial court.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.