**FOLSOM v. CARNLEY.** (4 Div. 37.)

(Supreme Court of Alabama. April 26, 1923. Rehearing Denied June 30, 1923.)

Taxation ☞574—Seizure and sale of automobile for delinquent taxes after destruction of tax records subsequently re-established under retroactive statute held authorized.

A tax collector's seizure and sale of an automobile for delinquent taxes, after the tax records were destroyed by fire and before the enactment of, and re-establishment of the lost records under, Act Oct. 29, 1921 (Gen. & Loc. Laws 1921 [Sp. Sess.] p. 22), which is a remedial and retroactive statute, declaring the substituted record of equal validity with the original, *held* authorized by the due assessment, evidenced and established as provided by Gen. Laws 1919, pp. 305, 306, §§ 64, 65; specific information of the exact nature and extent of the tax lien, which was not destroyed by the loss of the records, being available to the collector and taxpayer, whose respective rights could be safeguarded as provided by section 205.

Appeal from Circuit Court, Coffee County; Arthur B. Foster, Judge.

Detinue by J. A. Carnley against Fred Folsom. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Defendant filed a motion for new trial upon the ground, among others, that one of the jurors trying the case was related to the plaintiff within the prohibited degree, of which defendant was not advised or informed until after verdict rendered.

W. W. Sanders, of Elba, for appellant.

The effect of the substitution of plaintiff's tax record was to establish the right of the tax collector to demand payment of plaintiff's taxes, and, on failure to pay, the tax collector was authorized to seize and sell plaintiff's property. Acts 1921, p. 22; Acts 1919, p. 342, §§ 198, 205; Bailey v. Folsom, 207 Ala. 329, 93 South. 479; Clark v. Eagerton, 207 Ala. 491, 93 South. 455. The destruction of the certificate provided by Acts 1919, p. 305, § 64, along with the book of assessments, did not destroy the authority and duty of the collector to collect unpaid taxes. Jackson County v. Gullatt, 84 Ala. 243, 3 South. 906; Sprague v. Birchard, 1 Wis. 457, 60 Am. Dec. 393; 37 Cyc. 1201; Bedsole v. Davis, 189 Ala. 325, 66 South. 491; Newcomb v. Drummond, 4 Leigh (Va.) 57. An officer who has seized property under a valid legal process against the owner is not liable in detinue to the owner. 18 C. J. 1004. The motion for new trial should have been granted.

M. A. Owen and J. A. Carnley, both of Elba, M. S. Carmichael, of Montgomery, and W. O. Mulkey, of Geneva, for appellee.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The collection of taxes must be grounded upon duly authenticated assessments. Clark v. Eagerton, 207 Ala. 491, 93 South. 455; Jackson County v. Gullatt, 84 Ala. 243, 3 South. 906; Cooley on Tax. (3d Ed.) 794. An officer exceeding his authority may be held to answer for so doing. Easly v. Dye, 14 Ala. 158; Governor v. Gibson, 14 Ala. 326; Bissell v. Lindsay, 9 Ala. 162. A party moving for a new trial because a juror is related to a party must show that he did not know of the relationship. Greer v. Malone-Beall Co., 196 Ala. 401, 72 South. 28; Hurt v. Sou. Ry., 205 Ala. 179, 87 South. 533; Larkin v. Baty, 111 Ala. 307, 18 South. 666.

THOMAS, J. Plaintiff sued in statutory detinue for the automobile seized in the collection of taxes and sold by the tax collector, and for damages for its detention.

There was no error in denying the motion for a new trial on the ground and facts as to waiver stated. Hurt v. Southern Ry. Co., 205 Ala. 179, 182, 87 South. 533.

The suit was filed July 11, 1921, shortly after the automobile had been taken into possession of defendant; on July 14 replevin bond was given and the possession restored to defendant; and on July 22 the alleged tax sale was made by the tax collector. Prior to the taking of the car by said official—the defendant—for plaintiff's taxes due for 1920, all of the tax records of the county had been destroyed. The seizing of the car by Mr. Folsom was prior to any effort to re-establish or substitute said destroyed tax records, including that of plaintiff. Thereafter (October 29, 1921) the Legislature provided for the substitution of lost records, including assessment records. Under the operation of such statute the tax records and assessment of the property of plaintiff Carnley were established, and so certified of dates of December 27 and 29, 1921. General and Local Laws 1921, p. 22; Wise v. State, 208 Ala. 58, 93 South. 886.

As to the foregoing status, there is no conflict in the evidence; the only conflict being as to the value of the car. To the court's general charge no exception is reserved, and on submission the jury returned a verdict in favor of the plaintiff, establishing the value of the property as required by statute in such matters. Gwin v. Emerald Co., Inc., 201 Ala. 384, 78 South. 758.

Counsel agreed that the destruction of tax records, or their loss, did not destroy any existing lien of the state and county for taxes which remained unpaid. Such were the recent announcements of this court. Bailey v. Folsom, Tax Col., 207 Ala. 329, 93 South. 479; Clark v. Eagerton, 207 Ala. 491, 93 South. 455; Wise v. State, 208 Ala. 58, 93 South. 886.

The declared legislative effect and extent of a substituted tax record authorized by the statute is that "such substituted record shall be of equal validity with the original." General and Local Laws 1921, p. 22. This was a remedial statute, and was retroactive. Barrington v. Barrington, 200 Ala. 315, 76 South. 81. In Wise v. State, supra, this court declared:

"The establishment of the existence of the valid assessment and the discovery of its extent and nature by resort to a court of equity for such purpose have the practical effect of furnishing the conclusive evidence of former existence of such jurisdictional fact and to dispense with the necessity of thereafter resorting to secondary evidence in its proof, as by purchaser at such tax sale. May v. Parham, 68 Ala. 253; Peddy v. Street, 87 Ala. 299, 6 South. 3; Ward v. State, 78 Ala. 455; Whitney v. Jasper Land Co., 119 Ala. 497, 500, 24 South. 259."

The general authority of the tax collector may be thus stated. It is provided:

"After the book of assessments has been completed as herein provided, the county tax adjuster or the board of county tax adjusters shall certify on the book of assessments that the same has been examined and corrected by him by comparing the book of assessments with the tax returns, both as to items of property and amounts of assessments, and approved by him, and that the amount of state tax is $...... (here give amount), the amount of county tax is $...... (here give amount), the amount of special taxes is $...... (here give amount), specifying the total amount of each of such taxes, and such certificate is to be the warrant to the collector of the county to proceed to collect such taxes in the manner directed by law.

"When the book of assessments has been completed, as herein provided, the county tax assessor must without delay *make out in triplicate* upon forms to be furnished by the state auditor, a complete abstract of all real and personal property as contained in the assessment book of his county, showing the total amount and value of each class of taxable property, and property exempt from taxation, and the amount of tax on each item, extended in a column; such abstract of assessment must be approved and certified to by the county tax adjuster or the board of county tax adjusters, one of which the said tax assessor *must forward to the state auditor not later* than the first day of October, of each year, one to the state tax commission, and the other he must deliver to the tax collector by said date."

Gen. Acts 1919, §§ 64, 65, pp. 305, 306. (Italics supplied).

It is further provided by statute that—

"After the first day of January of each year, the tax collector must proceed, without delay, to levy upon any personal property of delinquent taxpayers for the payment of their taxes, and after having first given ten days notice of the time and place of sale, with a description of the property to be sold, by posting the same at three or more public places in the precinct of the residence of such delinquent, either at the time of assessment or of the levy, or if he is a nonresident of the county, in the precinct in which the levy is made, he must sell

the same, *or so much thereof as may be necessary to satisfy the taxes, fees and expenses of sale,* including expenses of keeping the property and moving the same to the place of sale in front of the court house of the county, or at the voting place, or, in case the amount of taxes does not exceed five dollars, at any other place in the precinct in which such notice was posted, at public outcry to the highest bidder for cash, and the property, so sold, shall not be subject to redemption. * * * But such taxpayer may, at any time before the sale, pay the taxes, interest, fees and expenses, including the collector's fees for the sale, the same as if it has been made, and thereby discharge the levy." Gen. Acts 1919, § 205, p. 344. (Italics supplied).

Appellant's insistence is that the *warrant* of authority of the tax collector for the *collection* of taxes is controlled by the final certificate of the tax adjuster, required to be *certified on the book of assessments,* and that in the *substitution* and establishment of this book of assessments, "the certificate of the tax adjuster, provided for in section 64, was also substituted" and established as a part thereof; that the destruction of the book of assessments and this certificate did not destroy the authority of the tax collector to collect the unpaid taxes; that the collector was not required to carry that authority "along with him when he is demanding the payment of taxes"; and that prima facie evidence of the existence of the lien, the nature and extent thereof, was of easy ascertainment by reference to the official certification thereof in the office of the state auditor. In Bedsole v. Davis, 189 Ala. 325, 66 South. 491 (ejectment), there had been a tax sale of lands where the records were in existence and thereafter the same were lost. It was permitted that "secondary evidence" be given by a witness who "knew the contents of the lost records and papers," to support the facts on which depended the right of sale.

Did the lien for taxes for the year 1919–20 exist? If so, on what property of the owner and the amount thereof? If the lien existed the tax collector should have sold for the satisfaction of "the taxes, fees and expenses of sale, including expenses of keeping the property." This sale of his personal property, which is not subject to redemption, the owner may prevent at any time before the sale by paying "the taxes, interest, fees and expenses, including the collector's fees for the sale, the same as if it has been made, and thereby discharge the levy." Gen. Acts 1919, § 205, p. 344. If specific available information does exist, to the tax collector and the taxpayer, of the exact nature and extent of that lien, before the levy and sale, the respective rights of the sovereign and subject can be safeguarded as provided by statute.

In Clark v. Eagerton, 207 Ala. 491, 492, 93 South. 455, 457, this court declared:

"The collection of taxes must be grounded upon duly authenticated assessments. Taxes have often been called the lifeblood of government, without which it cannot perform its necessary functions, or even long endure. 'Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.' Dows v. Chicago, 11 Wall. 108, 20 L. Ed. 65; Alabama, etc., Ins. Co. v. Lott, Tax Col., 54 Ala. 499, 507. .

"Without the record of assessments, county officials cannot safely or effectively proceed with the performance of the essential duties enjoined upon them by law with respect thereto, and the whole scheme of property taxation is thereby frustrated."

In Jackson County v. Gullatt, 84 Ala. 243, 248, 3 South. 906, is contained the expressions:

"There can be no question that a *warrant of authority* of some kind is necessary to enable the tax collector to collect taxes by compulsory proceedings;" that when the statute provides a special or formal warrant, "the warrant must conform substantially to its provisions, and the statutory requirements as to its frame and issue should be carefully observed" before the tax collector may proceed "to compulsory action. * * * This [warrant of authority] * * * may be the assessment roll or list, with the tax extended upon it; or it may be a duplicate of the list, with a like extension; or it may be either of them, with a formal warrant attached, particularly indicating what are his particular duties under it, and commanding their performance.' Cooley on Tax. 424. Where the statute makes provision for the attachment of a formal warrant to either, whether the assessment roll or the duplicate constitutes the warrant of authority, depends on the requirements, as to which the formal warrant shall be attached. * * * But, nevertheless, the collector must have a warrant of authority, to justify the compulsory collection of taxes." (Italics supplied.)

The warrant of authority was the due assessment, the evidence of which was preserved and established according to the mandates of the law. The statute for the establishment of the existence, nature, and extent of the tax lien was remedial and had retroactive effect—such was its declared legislative effect.

For the refusal to give the general charge for defendant, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., ad McCLELLAN and SOMERVILLE, JJ., concur.