HOUSTON, Justice.[1]
Dr. Willoughby Echols Lacy III and his wife Barbara Lacy sued Alabama Power Company and Asplundh Tree Expert Company (“Asplundh”), on November 12, 1997. They sought damages based on claims alleging negligent cutting of trees, wantonness, trespass, conversion, and conspiracy. The trial court entered a summary judgment for the defendants. The plaintiffs appealed. We affirm.
In 1972, Alabama Power, by condemnation, acquired a transmission-line easement across certain land in Elmore County. This easement crossed the Lacys’ lands. The probate commissioners awarded them and their mortgage holder $9,000 in compensation for the easement. Alabama Power paid that amount into the probate court and, pursuant to Title 19, § 18, Code of Alabama (1940), now Ala.Code 1975, § 18-1A-284, began installing the transmission line. The Lacys appealed to the circuit court for a trial de novo. Alabama Power obtained a temporary injunction against the Lacys after they had interfered with the construction of the transmission line. In the circuit court, the jury awarded the plaintiffs and their mortgage holder $3,090. This amount was deducted from the $9,000 paid into court by Alabama Power, and the balance was refunded to Alabama Power. On May 9, 1974, the temporary injunction was made permanent; it enjoined the Lacys from
“interfering with or obstructing or preventing in any manner whatsoever the enjoyment of the lawful rights of [Alabama Power] to enter upon its easement as herein described above and to install its towers, poles ... and to clear and remove such timber outside of said rights-of-way as may injure or endanger the ... wire lines.... ”
The Lacys concede that Alabama Power has a 50-foot easement across their lands, under the doctrine of prescription. The gravamen of the Lacys’ 1997 action is the cutting of timber by the defendants from the Lacys’ lands outside the easement.
The Lacys contend that there is no executed order of judgment in the Elmore County court file relating to the condemnation action and that the trial court erred in permitting the defendants in this present action to resort to secondary evidence to prove the contents of an alleged order of judgment in the condemnation case. The clerk of the Elmore Circuit Court executed a “certificate of absence” stating that there was no signed or unsigned original or copy, of the order of judgment in the court file in the condemnation case.
An attorney of record for Alabama Power in the 1973 condemnation proceeding executed an affidavit stating that he prepared the order of judgment; that he witnessed the trial judge’s signing the order of judgment (that judge is now deceased); that he, on instruction from the trial judge, filed a signed order of judgment with the person who was clerk of the Elmore Circuit Court in 1973; and that the unexecut-ed copy of the order of judgment that was introduced into evidence in this case was a true and correct copy of the original order *1186 of judgment signed by the trial judge in 1973.
An old ease, Stewart’s Administrator v. Stewart’s Heirs, 31 Ala. 207, 214 (1857), perhaps supports the plaintiffs’ contention that one cannot use secondary evidence to prove the contents of an order of judgment: “The judgments of courts of record can only exist in the records of the court. They cannot exist in parol, or be proven by oral evidence.”
Without referring to Stewart’s, this Court departed from that holding in Whitney v. Jasper Land Co., 119 Ala. 497, 500, 24 So. 259, 260 (1898), which involved the loss of a will and the record of the probate of that will. This Court held:
“[T]he court is to be satisfied from the evidence adduced of the former existence and contents of the instrument and the record of it, which is proposed to be substituted and may receive affidavits, or any legitimate testimony, oral or written. The substitution should be made, as is held, only on clear and satisfactory evidence of the former existence, contents and loss of the record proposed to be substituted....
“... When a substantial copy of the lost or destroyed record is satisfactorily proved, it must be substituted for the original, and when substituted, it has the same effect and efficacy, no more nor less, than the original would have had.”
Again, without referring to Stewart’s, this Court departed from the Stewart’s holding in Bedsole v. Davis, 189 Ala. 325, 328, 66 So. 491, 492 (1914), a case involving lost records of a tax sale:
“It appears from the evidence that substantially every court record covering this particular tax sale was lost. It also appears that no copy of the notice which was given of the tax sale was in existence when the trial was had. This being true, the court had a right to resort to secondary evidence; and as there were witnesses who, if they testified truthfully, knew the contents of the lost records and papers, the court properly permitted them to testify to their recollection of the contents of such records and papers. This proposition is so weU established that we cite no authorities to sustain it.”
(Emphasis added.) See, also, Folsom v. Carnley, 210 Ala. 131, 97 So. 95 (1923); Charles W. Gamble, McElroy’s Alabama Evidence, § 229.02(3) (5th ed. 1996) (“Should all such documents [i.e., ‘final record, minutes, original documents filed, judge’s bench notes and written decrees’] be unobtainable by the exercise of reasonable diligence, then other evidence of the contents of the original judgment, including oral testimony, is admissible.”).
To the extent that Stewart’s Administrator v. Stewart’s Heirs, supra, conflicts with Whitney v. Jasper Land Co., supra; Bedsole v. Davis, supra; Folsom v. Carnley, supra; and § 229.02(3) of McElroy’s Alabama Evidence, it is overruled.
The trial court did not err in receiving uncontradicted secondary evidence to prove the existence and contents of the order of judgment in the 1973 condemnation case.
The order of judgment provided, in pertinent part:
“AND IT IS FURTHER ORDERED, ADJUDGED and DECREED by the Court that the applicant, Alabama Power Company, be and it is hereby granted the right to construct and erect on, across and over the 50 foot strip of land described in Par. 9 of Article Fourth of said amended application, such towers, poles, and wire lines and all appliances necessary, convenient and useful in connection therewith for the purposes described in said application, as amended, together with all the rights confemd by law and all the rights that are necessary, useful or convenient to the full enjoyment of said rights, ways and rights of way for such uses and purposes, including the right and authority to clear and remove from said SO foot nght of way all timber and other growth *1187 thereon, and the right and authority to remove outside of said rights of way such timber as may injure or endanger such towers, poles, wire lines and other appliances by falling or otherwise, and including the right to place guy wires and anchors outside said 50 foot strip as described in said Par. 9 of Article Fourth of such application.”
(Emphasis added.)
Therefore, Alabama Power, and Asplundh as its agent, had the right to remove “danger trees” outside the right-of-way and the right to cut trees in order to reach danger trees and to provide escape routes, which were necessary to cut danger trees. See 29 C.F.R. §§ 1910.266, 1910.269, 1910.333(c); NCNB Texas Natl Bank, N.A. v. West, 631 So.2d 212 (Ala.1993); Barber Pure Milk Co. v. Alabama State Milk Control Bd., 275 Ala. 489, 156 So.2d 351 (1963). Not only does Alabama Power have the right to cut danger trees and collateral trees, but it is obligated under the law to do so. Alabama Power was entitled to cut trees in order to comply with the law; the plaintiffs presented no evidence indicating that the defendants cut trees unnecessarily or inappropriately.
We have considered the Lacys’ other arguments and find them to be without merit or to relate to matters as to which the principle de minimis non curat lex applies.
The trial court properly entered the summary judgment for the defendants. The Lacys did not appeal from the permanent injunction entered against them on May 9, 1974; they are by that final order enjoined from “interfering with or obstructing or preventing in any manner whatsoever the enjoyment of the lawful rights of [Alabama Power] to enter upon its easement ... and to clear and remove ... timber” as necessary.
The Lacys should not recover for anything de minimis that was caused by their disregard of that permanent injunction.
AFFIRMED.
HOOPER, C.J., and MADDOX, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
COOK, J., dissents.

. This case was originally assigned to another Justice on this Court; it was reassigned to Justice Houston on April 17, 2000.